UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM COX,<br>    Plaintiff<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT OF CORRECTION; HAROLD W. CLARKE, former Commissioner of the Department of Correction, in his official and individual capacities; LUIS S. SPENCER, Commissioner of the Department of Correction, in his official and individual capacities; STEVEN J. O'BRIEN, superintendent of the Old Colony Correctional Center, in his official and individual capacities; KATHERINE CHIMEL, Deputy Commissioner of the Classification, Programs and Reentry Division of the Department of Correction, in her official and individual capacities; VERONICA MADDEN, the Associate Commissioner of Reentry and Reintegration of the Department of Correction, in her official and individual capacities,<br>    Defendants | C.A. # |

## PLAINTIFF'S COMPLAINT

Plaintiff William Cox for his complaint states as follows:

### INTRODUCTION

1. This is an action to recover monetary damages and injunctive relief for grievous and irreparable personal and emotional injury sustained as an inmate in the custody of the Department of Corrections [hereinafter DOC]. Plaintiff William Cox is a mentally disabled man incarcerated in the custody of the DOC, under the care and control of the Defendants, who has been subjected to inhumane treatment because the DOC's lack of a mental health facility, neglect and lack of care, kept vulnerable individuals

1

like Cox safe from dangerous and violent offenders. The DOC and each of the individually named defendants is aware of the effect placement of those with mental illnesses amongst violent offenders, and particularly the threats of harm to Cox. Nevertheless, they have taken no effective action to safely confine mentally ill individuals, like Cox, who is known to be a vulnerable inmate. By acting with deliberate indifference to this situation, each of the individually named defendants subjected Cox, a prisoner with mental illnesses and known vulnerability, to cruel and unusual punishment by subjecting him to cruel sexual abuse at the hands of other inmates by failing to act in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff seeks compensatory, declaratory and injunctive relief for the deprivation of his rights as secured by the Constitution, laws and regulations of the United States and the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

2. This action arises under the Constitution and laws of the United States. This Court has subject matter jurisdiction over all claims arising under the United States Constitution, 42 U.S.C. §1983. This court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 1331, 2201 and 2202. This court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a).

3. Venue lies in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b). The events giving rise to this action occurred in this District.

## PARTIES

4. Plaintiff William Cox is an inmate in the custody of the Massachusetts Department of Correction.

2

5. The defendant Massachusetts Department of Correction [DOC] is a political subdivision of the Commonwealth of Massachusetts. The DOC receives federal financial assistance.

6. Defendant Harold W. Clarke was the Commissioner of the Department of Corrections in the Commonwealth of Massachusetts in 2010. Mr. Clarke was ultimately responsible for and controlled the care and custody of the Plaintiff and the operation and actions of the DOC. He is being sued in his official and individual capacities.

7. Defendant Luis Spencer is the current Commissioner of the Department of Corrections in the Commonwealth of Massachusetts. Mr. Spencer is ultimately responsible for and controls the care and custody of the Plaintiff and the operation and actions of the DOC. He is being sued in his official and individual capacities.

8. Defendant Steven J. O'Brien is the superintendent of Old Colony Correctional Center [hereinafter OCCC]. Mr. O'Brien was ultimately responsible for and controlled the care and custody of the Plaintiff while he was housed in the OCCC, and the operation and actions of the Old Colony Correctional Center. He is being sued in his official and individual capacities.

9. Defendant Katherine Chimel is presently the Deputy Commissioner of Classification, Programs, and Reentry Division. She is responsible for health services, division of inmate risk and placement and the classification division. She is sued in her official and individual capacities.

10. Defendant Veronica Madden is the Associate Commissioner of Reentry and Reintegration of the DOC, and at all times relevant to this Complaint, was acting within the scope of her employment and under color of state law in this capacity. Defendant Madden has supervisory authority over Inmate Health Services, including

3

the provision of mental health care to prisoners held in segregated confinement. She is sued in her official and individual capacities.

## STATEMENT OF FACTS

### Mr. Cox Is An Inmate in the Custody of the Department of Correction

11. The Plaintiff, William Cox, is a 53-year-old man with mental retardation and an IQ of 55. *See* Exh. 5, Bridgewater State Hospital Discharge Summary, December 10, 2007.

12. Mr. Cox is serving a sentence for second-degree murder imposed in 2007. With jail credits for 4.5 years he served awaiting trial, he is eligible for parole in 2017.

13. Prior to trial, Mr. Cox was found incompetent to stand trial, but was later found competent to stand trial, and was convicted of second-degree murder.

14. Mr. Cox began serving his state sentence at MCI Cedar Junction on February 6, 2007.

15. Mr. Cox was referred from MCI Cedar Junction to Bridgewater State Hospital. The referral information identified that, since his admission, Mr. Cox was a target of other inmates. It was further reported that because of his cognitive deficits, he could not appropriately make the adjustment to Cedar Junction. Mr. Cox was discharged from Bridgewater State Hospital on December 10, 2007, and transferred to Maximum Security Prison Souza Baranowski Correctional Center. *See* Exh. 5.

16. Mr. Cox cannot read or write. Further, Mr. Cox is incapable of dialing the telephone. Because he cannot read or write, and has no assistance from the institution, Mr. Cox relies upon other inmates to assist him in writing letters and using the telephone as these are tasks that he cannot complete without assistance. This gives certain inmates a position of power over Mr. Cox.

**Protection from Harm and Dangerous and Violent Conditions of Confinement**

17. On information and belief, in 1989, the Governor's Special Advisory Panel on Forensic Mental Health recommended that the DOC establish a comprehensive mental health center with a 45 to 60 bed high security residential treatment unit and a 6 to 10 bed crisis residence unit that could serve as an alternative to both segregation and Bridgewater State Hospital.

18. On information and belief, in 1990, the DOC's mental health vendor at the time, Prison Mental Health Service, had extensive discussions with the DOC about the need for a comprehensive treatment unit for prisoners who would otherwise be confined in segregation. The Prison Mental Health Service recommended that this unit be for "chronically psychotic inmates who are currently too ill to function within the general prison population, but are too violent, disruptive, or not acutely psychotic enough to remain at Bridgewater State Hospital, and who therefore spend most of their sentence in segregation" and "inmates who repeatedly engage in self-mutilating behavior, not because they are either suicidal or psychotic, but because of a very severe personality disorder, and who also therefore spend most of their time in segregation." *Letter from James Gilligan and Marie King to DOC Associate Commissioner Frank Jones,* dated October 24, 1990. This recommendation was not heeded.

19. In 2004, Congress recognized the frequency that vulnerable inmates were subjected to rape in prison and enacted the Prison Rape Elimination Act, 42 U.S.C. § 15601 et seq. While the Act applies only to federal facilities, the widespread problem of sexual

5

assault against mentally ill and other vulnerable inmates was recognized on a national scale in this Act. In enacting the Act, Congress made a number of findings, including the following: (1) Inmates with mental illness are at increased risk of sexual victimization; (2) Most prison staff are not adequately trained or prepared to prevent, report, or treat inmate sexual assaults; (3) Victims of prison rape suffer severe physical and psychological effects that hinder their ability to integrate into the community and maintain stable employment upon their release from prison; (4) States that do not take basic steps to abate prison rape by adopting standards that do not generate significant additional expenditures demonstrate such deliberate indifference so as to violate the Eighth Amendment. *Id.*

20. In September, 2006, the DOC commissioned a suicide prevention assessment by Lindsay M. Hayes, Project Director of the National Center on Institutions and Alternatives. The Hayes Report recommended that DOC develop "effective alternative placement options for those inmates suffering from severe and persistent mental illness, but whose behavioral difficulties and security needs require more strict containment than can be afforded in general population." Hayes Report at 17-18. *Exh.* 2.

21. On information and belief, on March 20, 2006, the Legislature's Joint Mental Health and Substance Abuse Committee held an oversight hearing at which Dr. Kenneth Appelbaum, the Director of Mental Health for the UMCHP, testified that the DOC has a "dire need" for a high security residential treatment facility as an alternative to segregation for prisoners with mental illness, and that the number of mental health clinicians is seriously inadequate. Despite this testimony, and testimony from

correctional experts and family members of prisoners who committed suicide in segregation about the extraordinarily destructive impact of segregation on prisoners with mental illnesses, then superintendent of the DOC Dennehy told the Committee that DOC's existing policies adequately protect prisoners with mental illness from inappropriate placement in segregation.

22. On March 8, 2007, the Disability Law Center, on behalf of all Massachusetts prisoners with mental illnesses, filed suit against the Department of Correction and various employees in their official and individual capacities. *See* Exh. 2.

23. On April 12, 2012, the Disability Law Center and Department of Correction agreed on a settlement. In the settlement Chief Judge Wolfe recognized that the DOC had begun independent initiatives to improve conditions for mentally ill inmates in correctional facilities in 2007. *See* Exh. 3

24. The Court approved the settlement agreement between the Disability Law Center and Department of Correction. *See* Exh. 2.

25. As employees and representatives of the DOC, each of the individually named defendants are aware of each of the reports and recommendations described above.

**The Defendants Subjected Cox to Harm by Failing to Protect Him**

26. On February 25, 2010, Mr. Cox was housed at Old Colony Correctional Facility, in the "multipurpose unit" in the town of Bridgewater, Massachusetts.

27. Mr. Cox was raped in his cell by Keith Strickland, Barry Green and Jesse Descavich who held him by his neck and arms and attempted to put a deodorant container in his anal cavity. Exh. 6.

28. After informant information notified the facility of the incident, Mr. Cox confirmed the incident to his mental health worker, Vanessa Martino Fleming, and to IPS Sergeant Maryann Lewis. Exh. 6.

29. The Department of Correction, Sergeant Dennis Butler of the OCCC investigative Unit, did inform the Office of the District Attorney in Plymouth County of the indecent assault and battery on a retarded person. Exh. 7.

30. In September 2010 a grand jury convened to bring charges against Keith Strickland, Barry Green and Jesse Descavich. The men have been formally charged with the crimes by indictment in Plymouth County Superior Court. Exh. 4

31. A trial date has been set in each case for March of 2013.

32. Further, Mr. Cox has a history of being molested and raped by other inmates who give him candy and other treats to induce him in to cooperating.

**The Defendants Knew or Should Have Known that Plaintiff Cox was Unable to Keep Himself Free From Harm**

33. The Defendants' own documentation repeatedly refers to Mr. Cox as a particularly vulnerable inmate.

34. The Defendants and DOC were aware that Mr. Cox was mentally retarded. Exh. 5.

35. A DOC February 8, 2007 mental health progress note states that Mr. Cox "appears to be at risk of being a target of stronger inmates in this environment." Exh. 8.

36. The Bridgewater State Hospital Discharge Summary of December 12, 2008 reflects that Mr. Cox's referral papers indicate he was being targeted at MCI –Cedar Junction by other prisoners and the discharge instructions address the need for assistance with housing placement "given his limitations and potential for being targeted by other inmates." Exh. 5.

37. On information and belief, there are reports from other inmates indicating that Mr. Cox was repeatedly raped and victimized within sight of DOC staff.

**The Defendants Knew or Should Have Known that His Placement Subjected him to Harm**

38. Further, Mr. Cox was improperly classified to higher security institutions than his disciplinary history warranted thereby placing him with more threatening and violent inmates and causing further harm.

39. Mr. Cox's initial classification in August 2007 resulted in the classification board recommending that he be sent to North Colony Correctional Institution (NCCI), medium security, because the treatment team assessed that return to Cedar Junction, a maximum security institution, was contraindicated and he was less likely to be victimized at NCCI. That classification was overridden at the Superintendent's level and the max classification was approved at the commissioner's level. *See* Exh. 9.

40. In his 2008 and 2009 classification hearings, in violation of the Defendants' regulations, Mr. Cox was given seven points for a history of escape or attempts to escape for statements that Mr. Cox made to a mental health worker while housed at Bridgewater State Correctional Center, which, when reported, were noted to have been fantasies and not true threats. *See* Exh. 10, 11.

41. In his 2008 and 2009 classification hearings, and in violation of the Defendants' regulations Mr. Cox was given points for a history of prior institutional violence within the past seven years for statements that Mr. Cox made to a mental health worker while housed at Bridgewater State Correctional Center in 2007. See Exh. 10, 11.

42. Mr. Cox' classification reports for 2008 and 2009 indicate that he had no disciplinary

history. *See id.*

43. Defendants' regulations require an employee who has reason to believe that a disciplinary offense has been committed is required to write a disciplinary report and submit it to his or her supervisor for review within 24 hours, unless informal disciplinary procedures are appropriate. *See* 103 CMR 430.09 (2). Informal procedures require that the prisoner be issued an Informal Sanctions Form and given an opportunity to demand formal proceedings. *See* 103 CMR 430.09 (1). Under the disciplinary regulations, attempting or planning to commit an offense "shall be considered the same as the commission of the offense itself." *See* 103 CMR 430.24 (1-19) (2006).

44. Mr. Cox was not issued a disciplinary report for the incidents that resulted in the above-cited classification points.

45. Thus in 2008 and 2009, Mr. Cox received 12 points solely because of the February 21, 2007 comment he made to his mental health clinicians. These 12 points brought his total point score to 15, requiring that he be held in maximum security.

46. Mr. Cox was housed in the maximum security Souza Baranowski Correctional Center from December 12, 2007 to January 26, 2010. He was then placed in the maximum security Residential Treatment Unit (RTU) at Old Colony Correctional Center (OCCC) from January 26, 2010 to March 5, 2010. *See* Exh. 12.

47. On January 25, 2010, Defendants recommended Mr. Cox for transfer to a medium security facility. On February 25, 2010, a group of other prisoners sexually assaulted him after he was recommended for transfer but before he was transferred. The following month, Defendants transferred Mr. Cox to a medium security institution.

Exh. 13.

### Mr. Cox has Exhausted His Administrative Remedies

48. Because Mr. Cox cannot read or write, Mr. Cox filed a grievance on March 12, 2010 through his attorney at Prisoner's Legal Services, Lauren Petit. Exh. 18

49. Jody Brenner of the Department of Correction Legal Division told Attorney Petit orally that the grievance was partially allowed and partially denied.

50. Mr. Cox filed an appeal of his grievance on May 20, 2010. Mr. Cox sought to be kept safe and to receive monetary damages for what he experienced. Exh. 19.

51. On May 28, 2010, the DOC through superintendent James Saba, responded to Attorney Petit, and attached the Grievance decision, stating that the he was moved to NCCI Gardener with his safety in mind and that review into his allegations is ongoing. Further the response stated, "[u]ntil such time that this investigation is concluded, and it is determined that your allegations can be substantiated, your request for compensation cannot be considered at this time."

52. No compensation has been provided to date.

### Damages

53. Mr. Cox has been repeatedly sexually assaulted while housed with insufficient care and supervision and amongst calculating violent offenders against whom he relies upon because of his inability to function within the general prison popular and from whom he is unable to defend himself. He has suffered extreme emotional turmoil, emotional discomfort and physical violence from the inadequate care and protection of the Defendants.

11

54. Mr. Cox has suffered emotional degradation of being unable to live in a dignified manner, and being subjected to continued abuse while unable to protect himself.

## **CLAIMS FOR RELIEF**

### COUNT I
### Violations of the Eighth and Fourteenth Amendments to the United States Constitution
### "Cruel and Unusual Punishment"
### (42 U.S.C. § 1983)

55. Paragraphs 1 through 53 are incorporated by reference as if set forth fully herein.

56. Defendants, with gross negligence or deliberate indifference and under color of state law, have permitted, encouraged, tolerated and ratified a pattern and practice of unjustified, unreasonable and illegal conditions of confinement that constituted cruel and unusual punishment.

57. The actions of Defendants deprived and continues to deprive Mr. Cox of his right to be free from cruel and unusual punishment, as secured by the Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, by ignoring Mr. Cox's mental health needs and subjecting dangerously violent conditions of confinement and by exhibiting deliberate indifference to Plaintiffs' substantial risk of serious physical injury as a result of these conditions.

58. Defendants have long been aware of the consequences of the conditions of confinement for mentally ill persons through meetings and correspondence from legislative hearings, advocacy organizations, prisoner grievances and other means, but Defendants have failed to take reasonable corrective action and have been grossly negligent or deliberately indifferent.

59. The Defendants failed to implement and enforce effective policies and procedures governing the treatment of vulnerable and mentally ill inmates, like Plaintiff Cox.

60. By negligently failing to train and supervise correctional officers, and by negligently failing to implement and enforce effective policies and procedures, the Defendants have violated their duties to protect inmates in their custody from unreasonable risk of physical injury at the hands of other inmates.

61. As a direct and proximate result of Defendant's conduct and the policy or practice of the DOC, Mr. Cox suffered the severe and permanent injuries as described, and has been forced to endure mental suffering, and was deprived of his right to be secure in his person and free from the imposition of cruel and unusual punishment.

## COUNT II
### Violations of Article I of the Massachusetts Declaration of Rights
### "Cruel and Unusual Punishment"
### (M.G.L. ch. 12, § 11*I*)

62. Paragraphs 1 through 53 are incorporated by reference as if set forth fully herein.

63. Defendants, under color of state law, have deprived and continues to deprive Mr. Cox of his right to be free from cruel and unusual punishment, his right be free from cruel and unusual punishment, as secured by Article XXVI of the Massachusetts Declaration of Rights and M.G.L. ch. 12, § 11*I*, by ignoring Mr. Cox's mental health needs and subjecting dangerously violent conditions of confinement and by exhibiting deliberate indifference to Plaintiffs' substantial risk of serious physical injury as a result of these conditions.

64. Defendants have long been aware of the consequences of the conditions of confinement for mentally ill persons through meetings and correspondence from legislative hearings, advocacy organizations, prisoner grievances and other means, but have failed to take reasonable corrective action. As a direct and proximate result of Defendant's conduct and the policy or practice of the DOC, Mr. Cox suffered injuries as described.

## COUNT III
### Violation of the Americans with Disabilities Act
### 42 U.S.C. §12101 et. seq.

65. Plaintiff Cox restates and realleges paragraphs 1-53 as if fully set forth in this Count III.

66. Plaintiff is a qualified individual with disabilities as defined in the Americans with Disabilities Act ("ADA"). Since 2007, Plaintiff has been held in the custody of Defendants. He has mental impairments that substantially limit one or more major life activities, including but not limited to thinking, concentrating, and interacting with others, and controlling his behavior. As a state prisoner, Plaintiff meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by defendant DOC. 42 U.S.C. § 12102(2); 42 U.S.C. § 12131(2).

67. Defendant DOC is a public entity as defined under Title II of the ADA, 42 U.S.C. § 12131(1)(B).

68. Defendant DOC knowingly and consistently discriminates against Cox as a mentally disabled prisoner by failing to provide him with reasonable accommodation leaving Cox to rely on other inmates to provide assistance with reading, writing and making telephone calls.

69. The Defendant DOC's failure to provide individualized assessments of the mental health needs and treatment requirements of prisoners with mental illness, like Cox, and by failing to provide Cox with a suitable housing situation and instead placing Cox in disciplinary and administrative segregation, Cox is left largely untreated and unsupervised and denied the benefits of the facility's services, programs and

activities, including school, recreation, exercise, and mental health services, thus discriminating against the Plaintiff on the basis of his disability in violation of 42 U.S.C. § 12132.

70. Discrimination against Plaintiff as an inmate with mental illness occurs particularly because without the adequate facilities in the DOC, he cannot receive mental health services sufficient to stabilize his illness and enable him to protect himself from victimization.

71. Defendant DOC has discriminated against mentally disabled prisoners on the basis of their disabilities.

72. In placing prisoners with mental illnesses in disciplinary and administrative segregation, the Defendants have failed to furnish a reasonable accommodation to Cox to accommodate his disabilities; and deprived Cox of with adequate mental health services, adequate assistance with reading, writing and using the telephone, and adequate means to provide for his own safety.

## COUNT IV
### Negligence

73. The Plaintiff hereby repeats and re-alleges paragraphs 1 through 53 above as if fully set forth herein.

74. The Defendants' owed the Plaintiff a duty of care.

75. Based upon Defendants acts and omissions as aforesaid, the Defendants breached the duty of care owed to the Plaintiff.

76. The Plaintiff has suffered damages as a result of the same.

15

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

77. The Plaintiff hereby repeats and re-alleges paragraphs 1 through 53 above as if fully set forth herein.

78. Defendants had a reasonable basis to know that stronger inmates, like inmates Green, Descavich, and Strickland, posed a potential threat to the safety and well being of Plaintiff and/or that inmates were abusing Plaintiff, yet did not take action to protect Plaintiff from said abuse.

79. Defendants negligently permitted sexual assault or abuse against Plaintiff.

80. Defendants knew or should have known that their negligence was reasonably likely to cause harm to Plaintiff.

81. As a direct and proximate result of their actions and omissions as aforesaid, Plaintiff has suffered severe emotional distress, manifested by physical symptomatology, which a reasonable person would have suffered under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court:

a) Enter judgment for the Plaintiff and against the Defendants on all counts of this Complaint;

b) Award Plaintiff compensatory damages;

c) Award Plaintiff punitive damages;

d) Declare the acts and omissions of the Defendants violate Plaintiff's constitutional rights and federal law;

e) Enter a preliminary and permanent injunction requiring the Defendants, their agents, subordinates, employees and all others acting in concert with them to

cease their unconstitutional and unlawful practices to remedy their violations of the Constitution and Laws;

f) Award the Plaintiff reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988;

g) and Grant such other relief as the court deems just and proper.

**JURY DEMAND**

A jury trial is hereby demanded.

Respectfully Submitted,
WILLIAM COX
By His Attorneys,

/s/ Rosemary Curran Scapicchio
Rosemary Curran Scapicchio
107 Union Wharf
Boston, MA 02109
(617) 263-7400
Scapicchio_attorney@yahoo.com
BBO # - 558312

/s/ Amy L. Codagnone
Amy L. Codagnone
107 Union Wharf
Boston, Massachusetts 02109
(617) 263-7400
Codagnone.Attorney@gmail.com
BBO # 679716