# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **WILLIAM COX,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | **13-10379-FDS** |
| **MASSACHUSETTS DEPARTMENT OF** ) | |
| **CORRECTION; HAROLD W. CLARKE,** ) | |
| **former Commissioner of the Department of** ) | |
| **Correction, in his official and individual** ) | |
| **capacities; LUIS S. SPENCER, Commissioner** ) | |
| **of the Department of Correction, in his official** ) | |
| **and individual capacities; STEVEN J.** ) | |
| **O'BRIEN, Superintendent of the Old Colony** ) | |
| **Correctional Center, in his official and** ) | |
| **individual capacities; KATHERINE CHMIEL,** ) | |
| **Deputy Commissioner of the Classification,** ) | |
| **Programs, and Reentry Division of the** ) | |
| **Department of Correction, in her official** ) | |
| **and individual capacities; and VERONICA** ) | |
| **MADDEN, Associate Commissioner of Reentry** ) | |
| **and Reintegration of the Department of** ) | |
| **Correction, in her official and individual** ) | |
| **capacities,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

This is a civil rights and tort action brought by a mentally disabled prisoner. Plaintiff

William Cox alleges that the Massachusetts Department of Correction ("DOC") lacks a proper

mental-health facility and places vulnerable, mentally ill prisoners among violent inmates, and

that as a result he has suffered sexual abuse in violation of his constitutional rights.

On February 25, 2013, Cox filed a complaint against DOC; Harold W. Clarke, former

Commissioner of DOC; Luis S. Spencer, Commissioner of DOC; Steven J. O'Brien, superintendent of Old Colony Correctional Center; Katherine Chmiel, Deputy Commissioner of the Classification, Programs, and Reentry Division of DOC; and Veronica Madden, Associate Commissioner of Reentry and Reintegration of DOC. The complaint asserts claims for violation of plaintiff's rights under the Eighth and Fourteenth Amendments to the U.S. Constitution, pursuant to 42 U.S.C. § 1983; violation of his rights under Article I of the Massachusetts Declaration of Rights; and violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*[1] Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and preliminary and permanent injunctions requiring defendants to cease its allegedly unconstitutional and unlawful practices.

On June 12, 2013, defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12 (b)(6). For the reasons set forth below, the motion to dismiss will be granted in part and denied in part.

## I.   Background

Unless otherwise noted, the facts are presented as stated in the complaint.

### A.   Legal Background

In 1989, the Governor's Special Advisory Panel on Forensic Mental Health recommended that DOC establish a comprehensive mental-health center that could serve as an alternative to prison segregation and transfer to Bridgewater State Hospital. (Compl. ¶ 17). DOC discussed the recommendation with Prison Mental Health Service, its mental-health vendor, in 1990, but ultimately did not implement the recommendation. (Compl. ¶ 18).

---

[1] Plaintiff has voluntarily dismissed his claims for negligence and negligent infliction of emotional distress.

On March 20, 2006, the Joint Mental Health and Substance Abuse Committee of the Massachusetts Legislature held an oversight hearing.  The Committee heard testimony from Dr. Kenneth Appelbaum, who testified that DOC had a "dire need" for a high-security residential-treatment facility as an alternative to segregation for prisoners with mental illness, and that the number of mental-health clinicians was inadequate.  It also heard from family members of prisoners who had committed suicide in segregation.  The then-Superintendent of the DOC asserted at the hearing that the existing policies provided adequate protection to prisoners with mental illness.  (Compl. ¶ 22).

In September 2006, DOC commissioned a suicide-prevention assessment from the National Center on Institutions and Alternatives.  The resulting report, the Hayes Report, recommended that DOC develop alternative placement options for inmates suffering from mental illness who needed greater supervision than the general population.  (Compl. ¶ 20).

In 2007, the Disability Law Center filed a class-action suit on behalf of Massachusetts prisoners with mental illnesses against DOC and various employees.  (Compl. ¶ 22).  The Disability Law Center and DOC entered into a settlement on April 12, 2012, which was approved by the District Court (Wolf, J.).  At the time, the Court acknowledged that DOC had begun independent initiatives in 2007 to improve conditions for prisoners with mental illness in correction facilities.  (Compl. ¶¶ 23-24, Exs. 2, 3).  *See Disability Law Ctr. v. Massachusetts Dep't of Correction*, 2012 WL 1237760 (D. Mass. Apr. 12, 2012).

B.    **Factual Background**

William Cox is a 53-year-old man with an intelligence quotient ("IQ") of 55 who has been diagnosed with mental retardation.  (Compl. ¶ 11).  He cannot read or write and cannot dial

a telephone.  (Compl. ¶ 16).

Cox was convicted of second-degree murder in 2007.  He then entered the custody of DOC.  (Compl. ¶ 12).   He began serving his sentence at Massachusetts Correctional Institution ("MCI") Cedar Junction on February 6, 2007.  He was later referred to Bridgewater State Hospital.  He was discharged from Bridgewater on December 10, 2007, and transferred to Souza-Baranowski Correctional Center, a maximum-security prison.  (Compl. ¶¶ 14-16).  His medical records indicate that he had difficulty adjusting to MCI Cedar Junction because of his cognitive deficits and because he had been a target of other inmates.  (Compl. ¶ 15).

Cox's incarceration records indicate that he is a particularly vulnerable inmate.  For example, a DOC mental-health progress note written on February 8, 2007, states that he "appears to be at risk of being a target of stronger inmates in this environment."  A Bridgewater State Hospital Discharge Summary dated December 12, 2008, notes that he was being targeted by other prisoners and instructs that he needs assistance with housing placement "given his limitations and potential for being targeted by other inmates."  (Compl. ¶¶ 35-36).

Cox contends that DOC has improperly classified him to higher-security institutions.  In August 2007, DOC initially classified him as a medium-security prisoner, but that classification was overridden by the Superintendent and the Commissioner changed his classification to maximum security.  (Compl. ¶ 39).  At classification hearings in 2008 and 2009, DOC assigned Cox additional points for a history of escape and prior institutional violence.  According to the complaint, he did not, in fact, have any recorded disciplinary reports.  (Compl. ¶¶ 40-45).

On January 25, 2010, DOC recommended that Cox be transferred to a medium-security facility.  (Compl. ¶ 47).  However, as of one month later, on February 25, 2010, Cox had not

been transferred. Instead, he was residing in the "multipurpose unit" at Old Colony Correctional

Center ("OCCC") in Bridgewater, Massachusetts. (Compl. ¶ 26). That day, in Cox's cell, Keith

Strickland, Barry Green, and Jesse Descavich raped him by holding his neck and arms and

attempting to put a deodorant container in his anal cavity. (Compl. ¶ 27, Ex. 6). An informant

notified OCCC of the incident. Cox confirmed the incident to Vanessa Martino Fleming, his

mental-health worker, and IPS Sergeant Maryann Lewis. (Compl. ¶ 28, Ex. 6). DOC conducted

an investigation and informed the Plymouth County District Attorney, who brought charges

against Strickland, Green, and Descavich. (Compl. ¶¶ 29-31).

The complaint alleges that other inmates have mistreated Cox throughout his

imprisonment. They have given him candy and other treats to manipulate him into cooperating

with them. They have raped and molested him. (Compl. ¶ 32). Allegedly, this sometimes has

occurred within the sight of DOC staff. (Compl. ¶ 37). As a result of these incidents, Cox has

suffered extreme emotional distress. (Compl. ¶¶ 53-54).

Harold W. Clarke was the Commissioner of DOC in 2010; Luis Spencer is the current

Commissioner. The Commissioner has ultimate responsibility for and control over inmates in

DOC's custody, including Cox. (Compl. ¶¶ 6-7). Steven J. O'Brien is the Superintendent of

OCCC and has responsibility for the care and custody of OCCC inmates, including Cox.

(Compl. ¶ 8). Katherine Chmiel is the Deputy Commissioner of Classification, Programs, and

Reentry Division of DOC. In that position, she is responsible for Health Services, the Division

of Inmate Risk and Placement, and the Classification Division. (Compl. ¶ 9). Veronica Madden

is the Associate Commissioner of Reentry and Reintegration of DOC. In that position, she

supervises Inmate Health Services, including the provision of mental-health care to prisoners in

segregation.  (Compl. ¶ 10).  Plaintiff contends that defendants, as employees and representatives

of DOC, were (and are) aware of the reports and recommendations regarding inmates with

mental illnesses.  (Compl. ¶ 25).

### C.   Procedural History

Cox filed a grievance on March 12, 2010, through his attorney at Prisoners' Legal

Services.[2]   On May 11, 2010, in an oral decision, DOC granted his request for a transfer and

denied his request for monetary damages.  (Compl. ¶¶ 48-49; *see* Complaint, Ex. 1 at 63-65, 69-

72; Mot. Dismiss, Ex. 3).  Cox appealed the partial denial.  On May 29, 2010, DOC stated that it

would move Cox to North County Correctional Institution in Gardner, but denied his request for

compensation pending further investigation.  (Compl. ¶¶ 50-52).

On February 25, 2012, Cox filed suit in this Court.

## II.   Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and

give plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness

Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.

1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its

face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must

be enough to raise a right to relief above the speculative level, . . . on the assumption that all the

---

[2] The grievance states, in full:

> I was held in maximum security even thought [*sic*] I should not have been in maximum security.
> Even after I was classified to medium I was kept in maximum.  While in the maximum unit I was
> sexually assaulted.  I am mentally challenged and cannot read or write.  I was helped in writing
> this grievance by [attorney].  The DOC did not keep me safe.

(Compl., Ex. 1 at 69).  Cox requests as a remedy:  "Keep me safe.  Monetray [*sic*] damages."  (*Id.*).

allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as alleged do

not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer*

*Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III.    Analysis

Defendants have moved to dismiss the complaint on grounds of settlement and/or claim

preclusion and failure to exhaust administrative remedies.  Defendants have also moved to

dismiss various individual counts on multiple grounds.

### A.    Settlement and Claim Preclusion

Defendants contend that prosecution of this lawsuit is precluded by the resolution of two

prior lawsuits.  First, defendants contend that the settlement agreement in *Disability Law Ctr. v.*

*Massachusetts Dep't of Correction*, 2012 WL 1237760 (D. Mass. Apr. 12, 2012), bars this suit.

Second, defendants contend that plaintiff's prior suit against Clarke and Carol Mici, the

Assistant Deputy Commissioner of Classification, has a preclusive effect on the present suit.

The doctrine of claim preclusion, or *res judicata*, prohibits parties from contesting issues

that they have had a "full and fair opportunity to litigate." *Taylor v. Sturgell*, 553 U.S. 880, 892

(2008).  To apply, it requires three elements:  "(1) the earlier suit resulted in a final judgment on

the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical

or related, and (3) the parties in the two suits are sufficiently identical or closely related."

*Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010).  The decisions of state courts,

as well as federal courts, can have a preclusive effect.  *Willhauck v. Halpin*, 953 F.2d 689, 704

(1st Cir. 1991).  And settlements, like actual judgments, can bar later suits.  *Nottingham Partners*

*v. Trans-Lux Corp.*, 925 F.2d 29, 31 (1st Cir. 1991).

The *Disability Law Center* settlement in 2012 neither bars nor controls this suit.  In that

case, the Disability Law Center sued on behalf of all incarcerated individuals with serious mental

illness, a class that allegedly includes Cox.  The complaint alleged that the DOC's practice of

placing inmates with mental illnesses in segregated confinement violated their rights under the

Eighth and Fourteenth Amendments, the Rehabilitation Act, and the Americans with Disabilities

Act.  The final agreement, except in certain circumstances, "prohibits the placement of inmates

with serious mental illness in Departmental Disciplinary Units, a form of segregation, and limits

the use of other forms of segregation of inmates with serious mental illness."  *Disability Law*

*Ctr.*, 2012 WL 1237760, at *5.  The complaint here does not allege that Cox was placed in such

a segregation unit or was otherwise segregated.  Thus, the causes of action in that suit and the

present suit differ, and the settlement has no preclusive effect.

The decision in *Cox v. Commissioner of Corrections*, 09-4726D (Mass. Sup. Ct. Sept. 14,

2011), likewise does not bar this suit.  In 2009, Cox, who is the plaintiff here, sued two prison

officials, Clarke and Mici, on two grounds.  (*See* Mot. Dismiss, Ex. 1).  First, he alleged that

DOC's failure to promulgate the Objective Classification Manual as part of the inmate-

classification regulations violated the Massachusetts Administrative Procedure Act.  Second, he

contended that DOC had arbitrarily and capriciously applied the Manual's criteria to him, which

resulted in his alleged overclassification to a maximum-security facility.  In 2011, the Superior

Court, ruling on a summary judgment motion, held that the Manual did not have to be

8

promulgated as a regulation.  The court then dismissed his second argument on one or two

grounds—the opinion is unclear—that he failed to exhaust his DOC remedies, and/or that he had

been transferred to a medium-security facility, rendering the matter moot.[3]  During the pendency

of that suit, in February 2010, Cox was sexually assaulted.  He did not move to amend the state-

court complaint; instead, he filed a grievance with DOC and brought the present suit.

       The latter state-court decision satisfies the first and second criteria for claim preclusion.

The ruling was a final decision on the merits, which the parties do not contest.  And the parties

were the same or similar.  The plaintiff is the same, as is defendant Clarke, in both suits.  Mici in

the first suit has been replaced here with other DOC officials and the state agency itself.  But

there is a "close and significant relationship" between all of the defendants, all of whom are

prison officials.  *Airframe Sys., Inc.*, 601 F.3d at 18.  *See Negron-Fuentes v. UPS Supply Chain

Solutions*, 532 F.3d 1, 10 (1st Cir. 2008) (noting that claim preclusion applied "when a

government is sued first (unsuccessfully) and officers in their personal capacities sued afterwards

on the same theory").

       As to the third criterion, the First Circuit takes a "transactional approach" in determining

whether asserted causes of action are related for claim-preclusion purposes.  *Airframe Sys., Inc.*,

601 F.3d at 15.  The essential question is whether "the causes of action arise out of a common

nucleus of operative facts."  *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n*, 142 F.3d 26,

38 (1st Cir.1998).  Important factors include "whether the facts are related in time, space, origin

or motivation, whether they form a convenient trial unit, and whether treating them as a unit

---

[3] The Massachusetts Appeals Court, on review, passed over the failure-to-exhaust question and affirmed the lower court's decision on the ground that the issue was moot due to Cox's reclassification. *Cox v. Comm'r of Corr.*, 83 Mass. App. Ct. 1107 (2013).

conforms to the parties' expectations." *In re Iannochino*, 242 F.3d 36, 46 (1st Cir. 2001) (internal quotations omitted).  To be sure, some of the underlying facts of the cases are the same; plaintiff was in defendants' control and custody at all times, and the cases share the legal theory that plaintiff suffered harm because of defendants' overclassification.  But the sexual assault and related events occurred after the state court litigation was well underway, presenting a different set of operative facts.  The core theories differ, as well; the first suit was an action under state administrative procedure law for improper promulgation of a regulation, whereas the present suit seeks relief under federal civil rights law for alleged violations of constitutional rights.  The administrative procedures for a prisoner to file a grievance after an assault and to challenge a classification are distinct.  *See* 103 C.M.R. §§ 491.00, 761.00.  The requirement that an inmate exhaust his administrative remedies prior to filing suit in court also weighs against a finding of preclusion; at the time of the 2011 dismissal, plaintiff's § 1983 claim based on sexual assault was not yet ripe.  *See Massachusetts Sch. of Law at Andover, Inc.*, 142 F.3d at 38 (remarking that claim preclusion "will not attach if the claim asserted in the second suit could not have been asserted in the first").

Accordingly, the motion to dismiss will not be granted on the ground of settlement or claim preclusion.

**B.      Exhaustion**

Defendants next contend that plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983 . . . or any other Federal law, by a prisoner . . . until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This limitation on the ability of

prisoners to sue "applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other

wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  A plaintiff's failure to exhaust

administrative remedies is an affirmative defense as to which a defendant bears the burden of

proof.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).

The PLRA "uses the term 'exhausted' to mean what the term means in administrative

law, where exhaustion means proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

Requiring proper exhaustion in administrative proceedings "serves the twin purposes of

protecting administrative agency authority and promoting judicial efficiency."  *McCarthy v.

Madigan*, 503 U.S. 140, 145 (1992).  To that end, the PLRA requires that an inmate, prior to

initiating a lawsuit in court, exhaust all "available" remedies, not just those that meet federal

standards or that provide the same type of relief that the plaintiff seeks in court.  *Woodford*, 548

U.S. at 85.  Requirements set by state law and regulations "define the boundaries of proper

exhaustion."  *Jones*, 549 U.S. at 218.  Moreover, the need to comply with those administrative

requirements extends to "an agency's deadlines and other critical procedural rules."  *Woodford*,

548 U.S. at 90–91.

Pursuant to Mass. Gen. Laws ch. 124, § 1(I) and (q) and ch. 127, § 38E, the

Massachusetts Commissioner of Correction has issued regulations for the processing of inmate

grievances.  Those regulations are codified at 103 C.M.R. § 491.00 *et seq.*  Under the

regulations, a grievance must include, among other things, the date of the incident, the name of

the current institution, the name of the institution of complaint, a brief statement of facts, the

remedy being requested, and signatures of the inmate and staff recipient.  *Id*. § 491.09(2).  The regulations do not require the inmate to name defendants or state legal claims.  *Id.*  Under the regulations, the grievance should be initially reviewed by the Institutional Grievance Coordinator, who must investigate the factual basis and propose a resolution or deny the grievance within ten working days of receiving it.  *Id.* §§ 491.06, 491.10(1)(e).  Grievance denials must be made in writing and must "inform the inmate of the right of appeal."  *Id.* §§ 491.10 (1)(f),(4).  The inmate may appeal "within ten working days from receipt of a decision to the Superintendent."  *Id.* § 491.12(1).  If the Superintendent denies a grievance appeal, the regulations require that the appeal package be forwarded to the "departmental grievance coordinator," who may take any further action that the Superintendent is entitled to take in response to the original appeal.  *Id.* § 491.13.

Defendants contend that plaintiff failed to exhaust his claims for violation of the ADA, negligence, negligent infliction of emotional distress, and violation of his constitutional right to due process.  As noted, plaintiff dismissed the claims for negligence and negligent infliction of emotional distress, and the complaint does not allege a due-process violation.  Therefore, the sole remaining inquiry is whether plaintiff properly grieved his ADA claim.[4]

"The primary purpose of a grievance system is to alert prison officials of problems, not to act as notice that particular prison officials may be sued."  *Mallory v. Marshall*, 659 F. Supp. 2d 231, 238 (D. Mass. 2009).  Massachusetts regulations do not require that inmates list causes of action in a grievance.  *See Faust v. Cabral*, 2013 WL 3933021, at *3 (D. Mass. July 30, 2013).  Therefore, to determine whether the agency received sufficient notice "to investigate and

---

[4] Defendants do not appear to challenge that plaintiff exhausted his administrative remedies as to the § 1983 claims.

consider all grounds" for the prisoner's complaint, the Court looks to see whether the "claims in the complaint are 'like or reasonably related' to the allegations in the grievance." *Id.* (internal quotations and citations omitted).

Here, plaintiff stated in his grievance that he was improperly classified and held in maximum security when he should have been in medium security, that he was sexually assaulted, that he was "mentally challenged" and could not read or write, and that DOC "did not keep [him] safe." (Compl., Ex. 1 at 69). He sought as a remedy that DOC "keep him safe" as well as monetary damages. (*Id.*). Those facts, under the circumstances, are sufficient to establish the basic underpinnings of an ADA claim in that he claimed to have a disability (mental illness), that he was in a covered entity (a state prison), and that he was denied the benefits of the facility ("safe" housing and supervision). *See* 42 U.S.C. § 12132.

Consequently, because plaintiff substantially complied with the requirements of 103 C.M.R. § 491.00, the motion to dismiss will not be granted for plaintiff's failure to exhaust remedies.

### C.    Civil Rights Claims (Counts 1 and 2)

The complaint asserts claims under 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 12, § 11I, alleging that defendants violated plaintiff's rights under the Eighth and Fourteenth Amendments to the Constitution.

### 1.    State Agency Defendant

To bring a valid claim under § 1983, a plaintiff must allege that some "person" acting under color of state law deprived him of "rights, privileges or immunities secured by the constitution." 42 U.S.C. § 1983. It is well-settled, however, that neither a state nor its agencies

or officials are "persons" within the meaning of § 1983.  *Brady v. Dill*, 24 F. Supp. 2d 129, 130

(D. Mass. 1998) (*citing Will v. Michigan Department of State Police*, 491 U.S. 58, 70–71

(1989)); *see also Cook v. McLaughlin*, 917 F. Supp. 79, 82 (D. Mass. 1996).  The Massachusetts

Department of Correction is a state agency, Mass. Gen. Laws ch. 27, § 1, and therefore is not a

"person" subject to suit under § 1983.  *Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 & n. 6

(1st Cir. 2009).

Likewise, the DOC is not considered a "person" within the meaning of the state civil

rights statute, Mass. Gen. Laws ch. 12, § 11.  *See Commonwealth v. Elm Medical Laboratories,*

*Inc.*, 33 Mass. App. Ct. 71, 76–77 (1992) (holding that by enacting the state Civil Rights Act, the

legislature did not intend to abolish sovereign immunity for the acts described in §§ 11 H and

11I).

Accordingly, counts 1 and 2 will be dismissed as to the DOC.

## 2.    <u>Individual Defendants</u>

The Eleventh Amendment permits suits under § 1983 for prospective relief against state

officials sued in their official capacities, but bars retroactive monetary relief.  *Ex parte Young*,

209 U.S. 123, 168 (1908); *Edelman v. Jordan*, 415 U.S. 651, 678 (1974); *see Wang v. New*

*Hampshire Bd. of Registration in Med.*, 55 F.3d 698, 700-01 (1st Cir. 1995).  For a plaintiff to

obtain monetary relief, he must sue state officials in their individual capacities.  *See Pennhurst*

*State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984).

There is no vicarious liability under § 1983.  Supervisors will be liable "when their own

action or inaction, including a failure to supervise that amounts to gross negligence or deliberate

indifference, is a proximate cause of the constitutional violation."  *Guzman v. City of Cranston*,

812 F.2d 24, 26 (1st Cir. 1987) (quoting *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)).

This encompasses situations where a supervisor "formulates a policy or engages in a practice

that leads to a civil rights violation committed by another," and where he has notice of the

conditions likely to lead to a deprivation of constitutional rights. *Camilo-Robles v. Hoyos*, 151

F.3d 1, 7 (1st Cir. 1998).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an

inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Such

officials have "a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.*

at 833. There are two substantive components of an Eighth Amendment suit: that the

deprivation is, objectively, "sufficiently serious," and that the official was, subjectively,

"deliberately indifferent" to the prisoner's mental health or safety. *Id.* at 834.

The complaint here adequately pleads a constitutional deprivation. It alleges that

plaintiff was sexually assaulted by other inmates and suffered other abuses while incarcerated,

which could indicate a failure to protect on the part of prison officials. Furthermore, it provides

sufficient information that "(1) the defendant[s] knew of (2) a substantial risk (3) of serious harm

and (4) disregarded that risk." *Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 64 (1st Cir.

2002). It alleges that plaintiff's history of mental illness was well-documented, that each of the

individual defendants knew of the dangers faced by inmates with mental illnesses, and that they

failed to take appropriate steps to protect him. *Cf. id.* at 65 (1st Cir. 2002) (holding that the

required knowledge is not knowledge that a specific harm would occur, but instead "knowledge

of facts from which the official can draw the inference that a substantial risk of serious harm

exists"). That failure purportedly included both a failure to implement and enforce adequate

15

policies and procedures and a failure to train and supervise correctional officers properly.  Each individual defendant is alleged to have some official responsibility for policies, procedures, and training that led to plaintiff's injury and subjective knowledge of the danger to his safety; that is, the liability alleged is not merely supervisory.  The complaint plausibly contends that these failures were a direct and proximate cause of plaintiff's physical injury.  Of course, whether plaintiff can prove those claims, or produce sufficient evidence for the claim to survive summary judgment, remains to be seen.

Therefore, for the purposes of a motion to dismiss, the complaint adequately pleads a cause of action under § 1983 against the individual defendants.  The question remains, however, whether the claim is nevertheless barred by the doctrine of qualified immunity.

The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme Court has articulated a two-part test for determining qualified immunity.  *Pearson v. Callahan*, 555 U.S. 223 (2009).  *See Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009).  The relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  *Id.*

At this stage of litigation, the complaint sufficiently alleges a violation of constitutional rights.  And both the Supreme Court and First Circuit have held that "deliberate indifference" to a prisoner's safety violates the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 561 (1st Cir. 1988).  Therefore, at

16

the time of the alleged constitutional deprivation, the law was clearly established that a prison official could not be deliberately indifferent to a risk of serious physical harm to an inmate. Dismissal of the § 1983 claim at this stage is therefore unwarranted.  Accordingly, the motion to dismiss count 1 as to the individual defendants will be denied.[5]

The Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I, provides a cause of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by "threats, intimidation, or coercion."  *See Bally v. Northeastern Univ.*, 403 Mass. 713, 717 (1989).  The complaint here does not allege any threats, intimidation, or coercion on the part of defendants, even generally.  Accordingly, count 2 will be dismissed as to the individual defendants.

### D.        Americans with Disabilities Act Claim (Count 3)

Title II of the ADA prohibits discrimination by public entities against persons with disabilities.  42 U.S.C. § 12132.  This prohibition applies to state prisons.  *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) (holding that the ADA covers inmates in state correctional facilities).  In order to state a claim, plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability."  *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000).  Federal regulations require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of

---

[5] Of course, as noted, plaintiff will be able to pursue only injunctive relief, not monetary damages, against defendants as sued in their official capacities.

17

disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Defendants do not contend that plaintiff failed to plead a claim under the ADA. Instead, they assert only that plaintiff has failed to allege that they did not reasonably accommodate him.

The complaint alleges that defendants knew of plaintiff's disability and of his need for a modification. (Compl., Ex. 5). Specifically, it alleges that medical professionals encouraged DOC staff to place him in appropriate housing in light of his limitations and potential for being targeted by other inmates. *See Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 260-61 (1st Cir. 2001) (discussing the sufficiency of a request for reasonable accommodation). Whether such accommodation was reasonable is a question that cannot be resolved on a motion to dismiss. *See Darian v. Univ. of Massachusetts Boston*, 980 F. Supp. 77, 88 (D. Mass. 1997) (noting that reasonableness of accommodation typically is a question to be resolved at trial).

The complaint thus states a plausible claim under the ADA sufficient to survive a motion to dismiss. Accordingly, the motion to dismiss count 3 will be denied.

## IV.   Conclusion

For the foregoing reasons, the motion to dismiss is GRANTED on count 1 as to defendant Department of Correction and on count 2 as to all defendants, and  is otherwise DENIED.

**So Ordered.**

                                                    /s/ F. Dennis Saylor
                                                    F. Dennis Saylor IV
Dated:  March 12, 2014                              United States District Judge