UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WILLIAM COX, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. #  13-10379-FDS |
| | ) | |
| MASSACHUSETTS DEPARTMENT OF | ) | |
| CORRECTION; et al, | ) | |
| Defendants | ) | |
| | ) | |

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

Now comes William Cox and respectfully requests that this Honorable Court provide the following instructions to the jury.  Mr. Cox also requests leave to file additional instructions as may become appropriate during trial.

**GENERAL INSTRUCTIONS**

**<u>Credibility of Witnesses</u>**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding whether to believe a witness and how much importance to give a witness's testimony, you must look at all the evidence, drawing on your own common sense and experience of life. Often it may not be what a witness says, but how he says it that might give you a clue whether or not to accept his version of an event as believable.

In deciding what to believe, you may consider a number of factors, including the following:

(1)     the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2)     the quality of the witness's understanding and memory;

(3)      the witness's manner while testifying;

(4)      whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5)      whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6)      how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7)      any other factors that bear on believability.

**Authority:** Modified from the Third Circuit Model Jury Instruction 1.7 and Massachusetts District Court Jury Instruction, Credibility of Witnesses, Instruction 2.260 (2009 ed.).

## <u>Credibility of Witnesses—Prison Officials</u>

There was quite a bit of testimony from different prison officials in this case. The testimony of a correctional officer should be considered by you just as any other evidence in this case, and in evaluating his or her credibility you should use the same guidelines which you apply to the testimony of any witness. You should recall their demeanor on the stand, their manner of testifying, the substance of their testimony, and you should weigh and balance it just as carefully as you would any other witness.

<u>Roberts v. Hollocher</u>, 664 F.2d at 200; <u>Darbin v. Nourse</u>, 664 F.2d 1109 (9th Cir. 1981); <u>Bush v. United State</u>s, 375 F.2d 602, 605 (D.C. Cir. 1967).

## <u>Bias of Officials as Witnesses</u>

Several of the witnesses are still employed by the Commonwealth of Massachusetts Department of Corrections and hence are interested witnesses in the outcome of this case. Their relationship with and employment by the Commonwealth of Massachusetts Department of Corrections are matters for you to consider, together with your observation of the witnesses and

the testimony you have heard, in determining whether they are biased in favor of the defendants, and what weight you will give to their testimony.

### Preponderance of the Evidence

The burden is on Mr. Cox to prove every essential element of his claims by a preponderance of the evidence. A preponderance of the evidence means evidence that makes you believe that what Mr. Cox seeks to prove is more likely true than not true. To put it differently, if you were to put Mr. Cox and defendants' evidence on opposites sides of a scale, Mr. Cox would have to make the scales tip slightly in his favor.

In determining whether any fact in issue has been proven by a preponderance of the evidence in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Modified from Pattern Jury Instructions (Civil) Fifth Circuit § 2.20 (1998).

## 42 U.S.C. § 1983 – CIVIL RIGHTS ACT INSTRUCTIONS

### 42 U.S.C. 1983
### General, Claims

Mr. Cox claims that he suffered injury as result of the deprivation under color of legal authority of rights secured both by the Constitution of the United State of America and by an Act of Congress providing for due process of law to all persons within the jurisdiction of the United States. Specifically, right violations are alleged as follows:

Mr. Cox was incarcerated under a substantial risk of harm, and Defendant O'Brien disregarded that risk. As result of these rights violations, Mr. Cox was caused great harm.

If Mr. Cox proves his claims by a preponderance of the evidence, he is entitled to compensatory damages. In addition to compensatory damages, Mr. Cox is entitled to punitive damages against Defendant O'Brien if you find that Defendant O'Brien's action or inaction was malicious, wanton, or oppressively done.

### General, Section 1983

Section 1983 of Title 42 of the United States Code provides that any inhabitant of this Federal District may seek redress in this Court by way of damages, against any person or persons who, under color of law, knowingly subject such inhabitant to the deprivation of any rights secured or protected by the Constitution or laws of the United States of America.

Mr. Cox has filed this action, under a provision of the United States Code, Title 42, section 1983, which gives a person the right to bring a lawsuit, and money damages, for a violation of his constitutional right by someone acting in an official capacity. Mr. Cox prevails on this claim if he proves two things:

1. that Defendant O'Brien acted under color of state law; and

2. that Defendant O'Brien deprived Mr. Cox of one or more constitutional rights.

### Color of Law

"Acting under color of law" simply means acting in one's capacity as a staff member of the Department of Correction. There is no dispute that Defendant O'Brien in this case were acting under color of law at the time of this incident, and you must find this element to have been established.

### Eighth Amendment Claim

To establish an Eighth Amendment Claim against a prison official for failing to protect him, Mr. Cox must first allege facts sufficient to show that "he [is] incarcerated under conditions imposing a substantial risk of serious harm."

I instruct you as a matter of law that prison officials, such as Defendant O'Brien, have a duty to protect prisoners from violence at the hands of other prisoners. Prison officials must take reasonable measures to guarantee inmates' safety from attacks by other inmates.

I further instruct you as a matter of law that assault by another inmate, including sexual assault, is a serious harm.

Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002) (citing Farmer, 511 U.S. at 834). Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988); See Durrell v. Cook, 71 Fed. Appx. 718, 719-20 (9th Cir. 2003); Jensen, 94 F.3d at 1198; Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002).

## Knowledge of Law, Constructive

Officials are held to have constructive knowledge of established law.

Cannon v. Denver, 998 F.2d 867 (10th Cir. 1993).

## Deliberate Indifference – Defined

Deliberate indifference is something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. In order to establish "deliberate indifference," Mr. Cox must only show that Defendant O'Brien was reckless.

To prove this Mr. Cox must demonstrate by a preponderance of the evidence that Defendant O'Brien knew of and disregarded an excessive risk to Mr. Cox's health and safety— in other words, Defendant O'Brien must have both been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he also must have drawn such an inference and then deliberately disregarded the risk. Mere negligence is not enough.

Deliberate indifference is established if Mr. Cox has shown by a preponderance of the evidence that there is actual knowledge of a substantial risk of harm and if the defendant disregards that risk by intentionally refusing or intentionally failing to take reasonable measures to deal with the problem.

### Deliberate Indifference-Proof

Mr. Cox can prove that Defendant O'Brien was deliberately indifferent by either direct evidence or indirect evidence, i.e. circumstantial evidence. Direct evidence might include documentary or verbal evidence as to Defendant O'Brien's state of mind. However, state of mind typically is not susceptible to proof by direct evidence. Therefore, you may look to indirect or circumstantial evidence, which is evidence that can be inferred from the facts of the case.

As a matter of law, I instruct you that, if you find sufficient circumstantial evidence that Defendant O'Brien disregarded a substantial risk to Mr. Cox's health or safety, then you must find for Mr. Cox on the Eighth Amendment claim.

Further, as a matter of law, if you find that Defendant O'Brien, as a supervisory official, was placed on actual notice of Mr. Cox's need for physical protection or medical care, his "administrative negligence can rise to the level of deliberate indifference to or reckless disregard for a prisoner's safety." Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984).

Spruce v. Sargent, 149 F.3d 783 (8th Cir. 1998)("While it is true that constructive knowledge, or the "should-have-known" standard, is not sufficient to support a finding of deliberate indifference [], it does not follow that the required element of subjective knowledge cannot be proved by evidence of surrounding circumstances. The question whether the official knew the risk is subject to demonstration, like any other question of fact, by inference from circumstantial evidence.").

**Deliberate Indifference – Obvious Risk**

In determining whether Defendant O'Brien was deliberately indifferent, you may conclude that he knew of the substantial risk to Mr. Cox's health or safety from the very fact that the risk was obvious. Furthermore, Defendant O'Brien does not escape liability if the evidence showed that he merely declined to confirm inferences of risk that he strongly suspected to exist.

If you find that Defendant O'Brien has shown by a preponderance of the evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that Defendant O'Brien, the official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence [is] sufficient to permit a trier of fact to find that [Defendant O'Brien] had actual knowledge of the risk."

See Farmer v. Brennan, 511 U.S. 825; 114 S.Ct. at 1981–82 (1994) (clearly limiting deliberate indifference to intentional, knowing or recklessness in the criminal law context which requires actual knowledge of a serious risk); Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 65 (1st Cir. 2002).

**No Specific Intent Required**

It is not necessary in a case like this to find that Defendant O'Brien had any specific intent to deprive Mr. Cox of his constitutional rights, or that he acted with malice or ill will in order to find for Mr. Cox. Mr. Cox is entitled to relief if Defendant O'Brien acted in a manner that then resulted in a violation of his constitutional rights. Whether Defendant O'Brien acted with subjective good faith is irrelevant.

You should also take into account all of the facts and circumstances which were known, or which should have been known, by Defendant O'Brien when you are assessing his responsibility to Mr. Cox or his liability to Mr. Cox. The question you must answer is whether in

the face of such facts and circumstances Defendant O'Brien treated Mr. Cox unreasonably and violated his constitutional rights, which shall be defined for you.

Motive, intent or design are seldom admitted directly, and if it existed, can be shown from the existence of other facts.

Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977; .Missouri Nat'l Education Assoc. v. New Madrid County R-1 Enlarged School Dist., 810 F.2d 164, 167 (8th Cir. 1987); Monroe, 365 U.S. at 167; Hudson v. New York City, 271 F.3d 62 (2d Cir. 2001) (reversing judgment for defendants where court instructed jury that an intentional violation of constitutional rights was required); Roberts v. Hollocher, 664 F.2d 200 (8th Cir. 1981).

### Substantial Risk of Harm – Proof

"When considering [whether an inmate is incarcerated under conditions posing a substantial risk of serious harm], the assailants' conduct can provide the court 'the most probative evidence of the degree and type of risk that [the inmate] faced.'" You may consider evidence of Strickland, Green and Descavich's conduct to determine the risk that Cox faced, and whether Defendant O'Brien disregarded that risk.

Nelson v. Shuffman, 603 F.3d 439, 447 (8th Cir. 2010)(citing Young, 508 F.3d at 872) (finding evidence of assailant's violent conduct and prior sexual assault of another inmate showed a substantial risk of harm to Plaintiff).

### Risk of Harm Need Not be To Cox

Mr. Cox need not prove that Defendant O'Brien had knowledge of the Strickland, Green or Descavich's identity, or Mr. Cox's identity, only of the risk of harm. Further, I instruct you that "it does not matter whether the risk [of harm] comes from a single source or multiple sources."

Farmer, 511 U.S. at 843.

**Regulations as Proof – Deliberate Indifference**

You have heard evidence regarding Department of Correction regulations. You may

consider regulations and internal policies are relevant to provide circumstantial evidence of what

Defendant O'Brien knew was required.

See Howell v. Burden, 12 F.3d 190, 191 (11th Cir. 1994); Phillips v. Roane County, Tenn., 532
F.3d 531, 541 (6th Cir. 2008); Pierson v. Hartley, 391 F.3d 898, 903–04 (7th Cir. 2004); Lopez v.
LeMaster, 172 F.3d 756, 761 (10th Cir. 1999) ("[the Oklahoma Department of Health jail
standards] do not establish constitutional parameters for the reasonable measures necessary to
insure inmate safety…provide persuasive authority concerning what is required.").

**THE AMERICANS WITH DISABILITIES ACT CLAIM**
**The American's With Disabilities Act – Purpose**

Congress instructs: "The primary purpose of the ADA Amendments Act is to make it

easier for people with disabilities to obtain protection under the ADA. Consistent with the ADA

Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the

definition of "disability" in this part shall be construed broadly in favor of expansive coverage to

the maximum extent permitted by the terms of the ADA. The primary object of attention in cases

brought under the ADA should be whether entities covered under the ADA have complied with

their obligations and whether discrimination has occurred, not whether the individual meets the

definition of "disability." The question of whether an individual meets the definition of

"disability" [] should not demand extensive analysis."

28 C.F.R. §35.101; Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5, n.5  (1st Cir. 2000) (the
regulations promulgated under the ADA are also "given legislative and hence controlling
weight").

**American's With Disabilities Act - Elements of the Claim**

Under the Americans with Disabilities Act, Mr. Cox has the burden of proving each of the following elements by a preponderance of the evidence:

(1) that Mr. Cox was disabled, and I will define disability;

(2) that Mr. Cox requested of Department of Correction ("D.O.C.") an accommodation due to his disability or the D.O.C. knew or had reason to know that Mr. Cox was disabled;

(3) that the D.O.C. could have reasonably accommodated his disability;

(4) that the D.O.C. failed to reasonably accommodate Mr. Cox's disability, causing Mr. Cox to suffer greater injury or indignity in the process than a non-disabled prisoner under the same or similar circumstances.

Modified from Instructions Given by the Court in Orr v. California Highway Patrol, 2:14-cv-00585-WBS (E.D. Ca.); see also Laurin v. Providence Hosp., 150 F.3d 52 (1st Cir. 1998); Soto-Ocasio v. Fed. Express Corp., 150 F.3d 14 (1st Cir. 1998).

### First Element—Mr. Cox Has a Disability

The first element of a claim under the Americans with Disabilities Act is that Mr. Cox has a disability. A "disability" is defined by the ADA as a mental or physical impairment that substantially limits the individual in at least one of the major activities of life. I shall now further define these terms for you.

A "disability" is a physical or mental impairment that substantially limits one or more major life activities.

Physical or mental impairment includes any physiological disorder, or condition affecting one or more of the following body systems:

(1)          neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary,

hemic and lymphatic, skin and endocrine; or

(2) any mental or psychological disorder such as an intellectual disability (formerly called mental retardation), organic brain syndrome, emotional or mental illnesses, and learning disabilities.

A "major life activity" is an activity that is centrally important to everyday life, including the operation of major bodily functions. Major life activities are the normal activities of living which a non-disabled person can do with little or no difficulty, such as caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, writing, communicating, and concentrating,

A limitation is substantial if Mr. Cox is unable to perform the activity or is significantly restricted in doing so, compared to an average person in the general population. An impairment that substantially limits one major life activity is a disability even if it does not limit any other major life activity.

Factors to consider in deciding whether a major life activity is substantially limited include:

(1) the nature and severity of the impairment;

(2) the duration or expected duration of the impairment; and

 3) the permanent or long-term impact of the impairment.

Wright v. Comp USA, Inc., 352 F.3d 472 (1st Cir. 2003); Arnold v. UPS, 136 F.3d 854 (1st Cir. 1998).

## **Major Life Activity**

If you find that Mr. Cox has an impairment, then you must determine whether that impairment substantially limits a major life activity. "Major life activities" are the normal activities of living. They include, but are not limited to, caring for oneself, performing manual

tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, writing, concentrating, thinking, communicating, and working.

ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (codified in 29 U.S.C. § 705 and scattered sections of 42 U.S.C.); 29 C.F.R. § 1630.2(i).

### <u>Americans With Disabilities Act - Qualified Individual</u>

The ADA defines a "qualified individual with a disability" as an "individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

42 U.S.C. § 12131(2).

### <u>Reasonable Accommodation</u>

Title II of the ADA regulates the conduct of public entities. I instruct you as a matter of law that the Department of Correction is a public entity within the meaning of Title II of the ADA.

The Department of Correction may not may not, either directly or through contractual, licensing, or other arrangements:

(i) Deny a qualified individual with a disability the opportunity to participate in or benefit from [an] aid, benefit, or service;

(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others;

(iii) Provide a qualified individual with a disability with an aid, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others; [or]

(vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right,

privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

28 C.F.R. § 35.130(b).

Our courts recognize three types of disability discrimination, all of which violate the

ADA: disparate treatment of a person with a disability, disparate impact of a seemingly neutral

policy or practice, and refusal to accommodate a disability where such accommodation was

needed to provide "meaningful access to a public service."

As public entities, prisons have an obligation to make reasonable accommodations that

permit disabled prisoners access to services or participation in programs or activities.

A public entity, like the D.O.C., must "operate each service, program, and activity so that

the service, program, or activity, when viewed in its entirety, is readily accessible to and usable

by individuals with disabilities." 28 C.F.R. § 35.150(a).

Under the ADA, defendants must make reasonable accommodations to "[a]fford [Mr. Cox]

an opportunity to participate in or benefit from the aid, benefit, or service that is . . . equal to that

afforded others." 28 C.F.R. § 35.130(b)(1).

The D.O.C. is required to "make reasonable modifications in policies, practices, or

procedures when the modifications are necessary to avoid discrimination on the basis of

disability, unless the public entity can demonstrate that making the modifications would

fundamentally alter the nature of the service, program, or activity." Id.  28 C.F.R. § 35.130(b)(7).

Prisons are obligated to make "reasonable accommodations" to allow the disabled person

access to the services or participation in programs or activities. See Fulton v. Goord, 591 F.3d

37, 43-44 (2d Cir. 2009). A "reasonable accommodation" is one that gives "meaningful access"

to the program or services sought. See Alexander v. Choate, 469 U.S. 287, 301 (1985).

See Henrietta D. v. Bloomberg, 331 F.3d 261, 273-76 (2d Cir. 2003); Nunes, 766 F.3d at 144-45; 28 C.F.R. §§ 35.130(b)(7), 35.130(b)(1)(ii).

### Reasonable Accommodation – Request

Mr. Cox must prove by a preponderance of the evidence that D.O.C was informed of Mr. Cox's need for accommodations due to a disability. Please keep in mind that there is no requirement under the law that a request be made for a particular or specific accommodation; it is enough to satisfy this element that the D.O.C. was informed of Mr. Cox's basic need for accommodations.

The provision of notice of a need of a reasonable accommodation through medical personnel is sufficient.

Further, you may be warranted in finding that the D.O.C. know of the individual's need for an accommodation because it is obvious.

Robertson v. Las Animas County Sheriff's Dep't, 500 F.3d 1185, 1197-98 (10th Cir. 2007)(Tenth Circuit found reasonable jury could conclude county jail's knowledge that detainee required communication accommodations flowed from knowledge of his deafness); Kiman, 451 F.3d at 283.

### Reasonable Accommodation – Defendants Burden

Once you find that Mr. Cox has proven by a preponderance of the evidence that he made a request for a reasonable accommodation, the burden of persuasion shifts, and the defendant bears the burden of demonstrating whether the accommodation was reasonable.

Further, the Defendants bear the burden of proving that the requested accommodation would impose an undue hardship.

Reed v. Lepage Bakeries, Inc., 244 F.3d 254, 258 (1st Cir. 2001); Borkowski v. Valley Central School District, 63 F.3d 131, 137-38 (2d Cir. 1995)( If the plaintiff meets burden of showing that

a reasonable accommodation exists, the analysis shifts to the question whether the proposed accommodations is reasonable; on this question the burden of persuasion lies with the defendant).

## The Public Entity Is Required to Provide the Accommodation

If you determine that Mr. Cox required an accommodation to independently access the Department of Correction's programs and services, bear in mind that the Department of Correction must provide the accommodation

You should not consider the assistance provided to Cox by persons not employed by the Department of Correction when considering whether an accommodation was provided. 28 C.F.R. § 35.130(b)(7);

## Reasonable Accommodations – Communication

"Public entities [must] to 'take appropriate steps' to ensure that the communication of information concerning prison services, activities, and programs is 'as effective' for the disabled as for the non-disabled." Clark v. California, 739 F. Supp. 2d at 1178; 28 C.F.R. § 35.160. Furthermore, "where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity," a public entity must furnish "appropriate[] aids and services." Id. at 35.160(b)(1).

## Programs or Services

"The ADA encompasses all services, programs, and activities provided by a prison to its prisoners."

Clark v. California, 739 F. Supp. 2d 1168 (N.D. Ca. 2010) (citing Crawford v. Ind. Dep't of Corr., 115 F.3d 481, 483 (7th Cir. 1997) ("The use of a library is, equally clearly, an activity, and so, only a little less clearly, is the use of the dining hall."); Chase v. Baskerville, 508 F. Supp. 2d 492, 506 (E.D. Va. 2007) (defining the provision of "telephones, computers, cable  televisions, and books" as "services" under the ADA).

I instruct you as a matter of law that the following are programs or activities within the meaning of the ADA:

(1) Access to telephones;
(2) Access to and ability to use showers, cleaning, and toilet facilities;
(3) The ability to accomplish activities of daily living, including cleaning one's self and one's space;
(4) Ordering items via canteen;
(5) Sending and receiving mail;
(6) The ability to request and access medical and mental health care through filing a sick slip;
(7) The classification process;
(8) The disciplinary process;
(9) The right to adequate food, clothing, shelter, sanitation, the right to request and receive medical care and the right to personal safety.

See Holmes v. Godinez, 311 F.R.D. 177 (N.D. Ill. 2015); Jaros, 684 F.3d at 672 (court noting that inmate access to showers and meals is a program or activity); Phillips v. Sherriff of Cook Cnty., 681 F. Supp. 2d 899, 916 (N.D. Ill.2009) (same); Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir. 1982); see Helling v. McKinney, 509 U.S. 25, 32 (1993).

Further, "Prison grievance procedures must be "readily available to all . . . inmates," and staff must make "appropriate provisions" to communicate those procedures to "the impaired and the handicapped." 28 C.F.R. § 40.3. Moreover, institutions must "ensure that the procedure[s are] accessible to impaired and handicapped inmates." Id. § 40.4.

The Defendants are required to "adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by [the Act]." 28 C.F.R. § 35.107(b). Because access must be "meaningful," Alexander, 469 U.S. at 301, prison staff must ensure that developmentally disabled prisoners can submit grievances. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) ("The right of meaningful access to the courts extends to established prison grievance procedures." (citation omitted))." Clark, 739 F. Supp. 2d at 1181.

"Further, daily living activities such as the use of showers, the exchange of laundry, and the receipt of medication constitute 'services, programs, or activities' under the ADA."

Clark v. California, 739 F. Supp. 2d 1168 (N.D. Ca. 2010) (citing Phipps v. Sheriff of Cook County, 681 F. Supp. 2d 899, 916 (N.D. Ill. 2009) ("showering, toileting, and lavatory use . . . regarded as programs and/or services under the ADA")).

### Interacting With Others as a Major Life Activity

When the major life activity under consideration is the ability to interact with others, Mr. Cox must prove, by a preponderance of the evidence, that he was substantially limited compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.

Difficulty getting along with others is not enough. Mr. Cox must show that his interactions with others were characterized on a regular basis by severe problems such as consistently high levels of hostility, social withdrawal, or failure to communicate when necessary.

Authority: See Weaving v. City of Hillsboro, 763 F.3d 1106, 1112-14 (9th Cir.2014), cert. denied, 135 S. Ct. 1500 (2015) (noting that interacting with others is not the same as getting along with others: "One who is able to communicate with others, though his communications may at time be offensive, 'inappropriate, ineffective, or unsuccessful,' is not substantially limited in his ability to interact with others within the meaning of the ADA.") (citation omitted). The language of the instruction was taken from McAlindin v. County of San Diego, 192 F.3d 1226, 1235 (9th Cir. 1999) ("Recognizing interacting with others as a major life activity of course does not mean that any cantankerous person will be deemed substantially limited in a major life activity.").  The definition of "substantially limited" is taken from 29 C.F.R. § 1630.2(j)(1)(ii).

### Denial of Access Was Due to Disability

The third element of a claim under the Americans with Disabilities Act is that the Department of Correction discriminated against Mr. Cox because of his disability.

To satisfy this element, Mr. Cox must prove by a preponderance of the evidence that the disability was a determinative factor in his exclusion. It need not have been the sole factor, but it must have been a decisive factor, meaning that but for the consideration of Mr. Cox's disability, Mr. Cox would have had an equal opportunity to access the programs and services.

### The Department of Correction Cannot Deny Equal Access to Services through a Third-Party Contractor

A public entity may not deny disabled inmates equal access to benefits or services either "directly or through contractual, licensing, or other arrangements."

28 C.F.R. § 35.130(b)(1); See, e.g., Botosan v. Paul McNally Realty, 216 F.3d 827, 833 (9th Cir. 2000) (In the related ADA Title III context, "a landlord has an independent obligation to comply with the ADA that may not be eliminated by contract [such as a lease]."); Frotton v. Barkan, 219 F.R.D. 31, 31 (D.Mass. 2003) (same) (citing Batosan); Susavage v. Bucks County Schools Intermediate Unit No. 22, 2002 WL 109615 at *20 (E.D.Pa. 2002) ("BCIU's argument that it delegated its duty cannot absolve it of liability under the ADA, IDEA or § 504 in this case. BCIU was the public agency responsible for Pennsylvania's compliance with federal statutory requirements[;] . . . it cannot abdicate that responsibility by delegating it to a private entity."); Bingham v. Oregon School Activities Ass'n, 24 F.Supp.2d 1110, 1116 (D.Or. 1998) ("I cannot accept the proposition that [public] schools can take themselves out of the reach of the ADA in the area of athletics by delegating rule-making authority [to a collective body representing many schools].").

### Plaintiff Need Not Show Which Defendant Violated His Title II Rights

For these claims under the ADA, the Department of Correction is responsible for the conduct of its employees. If you find that the Department of Correction employees did not conform their conduct to the law, the Department of Correction is responsible.

Plaintiff's Note: Where, as here, a plaintiff brings a direct suit against a public entity under Title II of the ADA, "the public entity is liable for the vicarious acts of its employees." Duvall v. County of Kitsap, 260 F.3d 1124, 1141 (9th Cir. 2001). It is only necessary to plead that the defendant is an officer of the Department that violated the law, and whom the court may order to conform his actions to law. Ex parte Young, 209 U.S. 123 (1908). Indeed, like as has occurred here, such suits often proceed against the present occupant of an office, on the basis of alleged wrongdoing performed by the present occupant's predecessor in office. Hafer, 502 U.S. at 25

("[W]hen officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation.").

## Regulations as Proof – American's With Disabilities Act

You have heard evidence regarding Department of Correction regulations. You may

consider regulations and internal policies are relevant to provide direct or circumstantial

evidence of what the Department of Correction Defendants knew was required. You may also

consider evidence of the regulations and internal policies as direct evidence of what programs

and services are offered by the Department of Correction.

See Howell v. Burden, 12 F.3d 190, 191 (11th Cir. 1994); Phillips v. Roane County, Tenn., 532 F.3d 531, 541 (6th Cir. 2008); Pierson v. Hartley, 391 F.3d 898, 903–04 (7th Cir. 2004); Lopez v. LeMaster, 172 F.3d 756, 761 (10th Cir. 1999) ("[the Oklahoma Department of Health jail standards] do not establish constitutional parameters for the reasonable measures necessary to insure inmate safety…provide persuasive authority concerning what is required.").

## PLAINTIFF'S JURY INSTRUCTIONS
## DAMAGES AND CAUSATION

### Damages, Introductory

Mr. Cox alleges that he has suffered a violation of constitutional rights and that he is

entitled to a verdict in his favor for general and punitive damages.

### Causation, Setting In Motion Causal Chain Acts By Others
### That Would Cause Others To Inflict Injury

For purposes of section 1983 liability, the requisite causal chain can occur through setting

in motion a series of acts by others which the actor knows or reasonably should know would

cause others to inflict a constitutional injury.

Many factors or things or the conduct of two or more persons can operate at the same

time either independently or together to cause injury or damage and in such a case each may

cause the ultimate injury.

Defendant O'Brien can deprive Mr. Cox of rights by his own action or inaction, or by setting in motion the violation of rights by others that causes injury.

See Johnson v. Duffy, 588 F.2d 740, 743–44 (9th Cir. 1978) (a defendant is liable not only for violations of rights he caused by his own conduct but also for violations of rights by others which he set in motion, where he reasonably should have known his conduct would cause others to inflict the constitutional injury).  Accord Harris v. Roderick, 126 F.3d 1189, 1196–97 (9th Cir. 1997).

## Liability

In a civil rights action such as this action, Mr. Cox is entitled to a verdict if it is proved, in accordance with these instructions, that Defendant O'Brien acted under color of state law and that such action operated to deprive Mr. Cox of rights under the Constitution or laws of the United States of America. Mr. Cox need not prove damages in order to be entitled to a verdict.

## Damages Causation

The burden is on Mr. Cox to establish by preponderance of evidence that he suffered damages, which were proximately caused by the Defendants actions or inactions. Damages are proximately caused by an action or inaction when it appears from the evidence that the action or inaction played a substantial part in bringing about and actually causing the damage and injury and the damages were either directly a result of, or a reasonable probable consequence, of the action or inaction.

Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 569 (1st Cir. 1989)

## Causation, One Cause

An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission was a substantial factor in brining about or actually causing the injury or damage; and that the injury or damage was either a direct result of, or a reasonable probable consequence of, the act or omission.

## Causation: Substantial Factor

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of the harm.

## Causation, Multiple Causes

This does not mean that the law recognizes only one proximate cause of an injury or damage, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons, may operate at the same time, whether independently or together, to cause injury or damage; and in such case, each may be a proximate cause.

Additionally, a person's wrongful conduct may combine with another factor to cause harm. If you find that a defendant's wrongful conduct was a substantial factor in causing plaintiff's harm, then defendant is responsible for the harm. A defendant cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing harm.

## Causation, Take Your Victim As You Find Him

A Defendant, like Defendant O'Brien, takes his victim as he finds him. Defendant O'Brien then is liable for all harm caused, even if you believe that Mr. Cox had a pre-existing condition that made it more likely he would be hurt more than a normal victim.

## Compensatory Damages

The fact that Mr. Cox's rights are found to have been violated, as a matter of law entitles him to actual damages. Therefore, if you decide for Mr. Cox on the issue of liability, you must

then fix the amount of money damages that will reasonably and fairly compensate him for any harm which the wrongful conduct of the defendants was a substantial factor in bringing about.

Among the elements of injury and harm which you should consider are:

1.      Any physical harm to Mr. Cox during and after his rape, or during his incarceration without access to programs and services, including ill health, physical pain, disability, or discomfort.

2.      Any fear, anxiety, emotional or other mental distress or harm which the plaintiff suffered during or after the rape, or during or after the inability to access programs and services;

3.      Any emotional and mental harm to Mr. Cox during and after the incident, including fear, humiliation, and mental anguish, and any emotional harm, fear, or mental anguish that Mr. Cox may, with reasonable certainty, suffer in the future. This measure of damages is commonly known as emotional distress damages.

## Emotional Distress Damages—Specifically.

In determining Mr. Cox's damages for emotional distress, you are to fairly compensate him for past, present and future pain and suffering associated with his emotional distress including compensation for mental anguish, humiliation, nervous shock, emotional disturbance, fright, terror, alarm and anxiety from the substantial risk to his health and safety, his rape, or from his inability to access prison programs or services. You may include in your award any amount that you feel will fairly compensate Mr. Cox for deterioration of his health, for future medical psychiatric and counseling expenses, and for impairment of his future earning capacity resulting from the emotional distress.

## Damages, Categories Of, Non-Economic

If you return a verdict that Defendant O'Brien and / or Department of Correction violated constitutional rights, you will award Mr. Cox a sum that will reasonably compensate for (1) any pain, suffering and mental anguish already suffered and proximately resulting from being the victim of a rape, being at a substantial risk of harm of sexual assault, or being denied access to prison programs or services, and (2) for any pain, suffering and mental anguish which you find from the evidence in the case that is reasonably certain to be suffered in the future from the same cause.

### Damages, Inferred, Humiliation

When there is no formal evidence of actual damage, such harm can be inferred from the circumstances as well as established by testimony. Humiliation is an item of damages.

### Damages, Punitive

You must also decide whether Mr. Cox is entitled to the award of any punitive damages. The function of punitive damages is to punish Defendant O'Brien for malicious conduct and to deter similar conduct by others. Whether you decide to award any punitive damages should be based on whether you find that Defendant O'Brien acted willfully, deliberately, maliciously, or with reckless disregard of Mr. Cox's constitutional rights. If you find that he has done any one of those things, then you should award punitive damages. Punitive damages may be awarded even if the violation of plaintiff'' rights resulted in only nominal compensatory damages.  That is, even if Mr. Cox can show no damages or other injury as a result of Defendant O'Brien's actions, if these actions were deliberate, willful, or made with reckless disregard of Plaintiff's rights, punitive damages are appropriate.

Smith v. Wade, 461 U.S. 30 (1983); Adickes v. S.H. Kress & Co., 389 U.S. 144, 234 (1970) (Brennan, J., concurring); Cochetti v. Desmond, 572 F.2d 102, 105-06 (3d Cir. 1978); Guzman

v. Western State Bank, 540 F.2d 948, 953 (8th Cir. 1976); Stolberg v. Bd. of Trustees, 474 F.2d
485 (2d Cir. 1973); Batista v. Weir, 340 F.2d 74 (3d
Cir. 1965).

### Punishment is a permissible purpose of Section 1983 liability.

A jury may assess punitive damages under Section 1983 when defendants' conduct

involves reckless or callous indifference to the federally protected rights of others.

### Damages, Deterrence

Deterrence is a primary, and common, purpose of both Section 1983 liability and punitive

damages.

### Payment of Damages, if Liable: Indemnification

The jury should be instructed that the Commonwealth has a statutory obligation to

indemnify the defendant should they be found liable in this case.

Authority: M.G.L ch. 258, sec. 9A entitled "Indemnification of Certain Public Employees,"
provides: If, in the event a suit is commenced against a member of the state police . . . by reason
of a claim for damages . . . The commonwealth shall indemnify members of the state police . . .
from all personal financial loss and expenses, including but not limited to legal fees and costs, if
any, in the amount not to exceed one million dollars arising out of any claim, action, award,
compromise, settlement and judgment resulting from any alleged intentional tort or by reason of
an alleged act or failure to act which constitution a violation of the civil rights of any person
under federal or state law; provided, however, that this section shall apply only where such
alleged intentional tort or alleged act or failure to act occurred within the scope of the official
duties of such police officer. No member of the state police . . . shall be indemnified for any
violation of federal or state law if such member or employee acted in a willful, wanton, or
malicious manner." The phrase "willful, wanton or malicious acts," as provided in M.G.L. ch.
258, sec. 9A, has been found by the Massachusetts Supreme Judicial Court to mean conduct so
egregious as would warrant the imposition of punitive damages. Pinshaw v. Metropolitan Dist.
Com., 402 Mass. 687 (1988), review den. 414 Mass. 1105 (1993).

### Damages on ADA Claim

If you find for Mr. Cox on Mr. Cox's ADA claim, you must determine Mr. Cox's

damages. You shall consider damages with regard to plaintiff's ADA claims by the same

standards as you shall consider the damages on plaintiff's federal claims, except that you may not award punitive damages on the ADA claims.

### Nominal Damages

If you find that that Cox has proven either or both of his claims by a preponderance of the evidence, you must award damages in an amount no less than $1 to Mr. Cox.

The law requires a damage award of at least $1. This requirement is separate and apart from your consideration of any other damages awards, including any awards for compensatory or punitive damages. You must separately consider whether Mr. Cox is entitled to compensatory or punitive damages, and I will instruct you upon those damages.

Authority: A plaintiff who establishes a violation of an absolute civil right is entitled to nominal damages even absent a finding of compensatory damages. The Supreme Court has explained that "By making the deprivation of … rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed." Carey v. Piphus, 435 U.S. 247, 266 (1978); Campos-Orrego v. Rivera, 175 F.3d 89, 98-99 (1st Cir. 1999). See also Robinson v. Cattaraugus County, 147 F.3d 153, 162-63 (2d Cir. 1998) (remanding for an entry in the amount of nominal damages for a constitutional violation because if the jury finds a constitutional violation but no injury "the plaintiff is entitled to nominal damages as a matter of law.").

### Interest

If you have determined that compensatory damages should be awarded to Mr. Cox, you must also decide whether to award interest. This lawsuit was begun years ago, and you may award interest on the sum which you have decided is an appropriate compensatory damage award, from that time to the present. Whether you do award interest should depend upon whether you conclude that interest is necessary to compensate Mr. Cox fully for any injury suffered, bearing in mind that Mr. Cox have not had the use of the damages you award during the time this

litigation has been pending. If you do award interest, the actual sum will be computed by the clerk at the rate provided by the law.

<u>Furtado v. Bishop</u>, 604 F.2d 80 (1st Cir. 1980).

Respectfully Submitted,
WILLIAM COX
By His Attorneys,

<u>/s/ Rosemary Curran Scapicchio</u>
Rosemary Curran Scapicchio
107 Union Wharf
Boston, MA 02109
BBO # 558312
(617) 263-7400
Scapicchio_attorney@yahoo.com

<u>/s/ Amy L. Codagnone</u>
Amy L. Codagnone
107 Union Wharf
Boston, Massachusetts 02109
(857) 265-2166
Codagnone.Attorney@gmail.com
BBO # 679716

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party and upon any party appearing pro se by complying with this Court's directives on electronic filing.

Dated: <u>February 25, 2017</u>                    Signed: <u>/s/ Amy Codagnone</u>

26