UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

WILLIAM COX,                          )
          Plaintiff                   )
                                      )
v.                                    )          C.A. #  13-10379-FDS
                                      )
MASSACHUSETTS DEPARTMENT OF           )
CORRECTION; et al,                    )
          Defendants                  )
_____)

## PLAINTIFF'S POST-TRIAL MOTION FOR EQUITABLE RELIEF

Now comes William Cox following a jury trial on his damages claims, and, per this

Court's order of March 17, 2017, respectfully addresses his request that this Court grant

prospective equitable relief.

In his Complaint, Cox requested that this Court: "Declare the acts and omissions of the

Defendants violate Plaintiff's constitutional rights and federal law" and "Enter a preliminary and

permanent injunction requiring the Defendants, their agents, subordinates, employees and all

others acting in concert with them to cease their unconstitutional and unlawful practices to

remedy their violations of the Constitution and Laws". 13-10379 Complaint, Prayer for Relief.

Following the jury trial in this case, during which Mr. Cox prevailed on his Title II of the

American's with Disabilities Act claim, prospective relief is warranted to abate the ongoing

violation of Cox's rights, particularly as the Defendant have shown no intention to change their

behavior, and as the relief sought is narrowly drawn.

The evidence presented to the jury at trial was confined to the specific areas that this

Court determined Mr. Cox had shown a genuine issue of material fact regarding whether the

Title II violation also caused a constitutional violation, thus abrogating sovereign immunity and

entitling him to damages. Cox was not permitted to present evidence relating to the various other

1

ways that the Defendants violate his Title II rights daily, including with denying access to canteen, the classification process, and the disciplinary process.

The jury considered whether the A.D.A. violations occurred up to, and including, the day of their verdict on four specific damages grounds. On March 10, 2017, following a jury trial, the jurors found that the Defendants had violated Mr. Cox's rights pursuant to the American's with Disabilities Act in the following ways: (a) procedures to obtain medical care; (b) procedures to report and resolve grievances; (c) procedures to report physical or sexual threats or assaults; (d) telephones. The jurors did not find a violation of the A.D.A. as to (e) showers. With their verdict, the jurors passed this Court a note stating, "We, the jury, strongly recommend that William Cox and others in a similar position are given an inmate companion or similar accommodation as soon as possible." The note was dated March 10, 2017, and signed by each member of the jury.

Because the jury has found a violation of Mr. Cox's American's with Disabilities Act rights, and because the Department has not changed its treatment of Cox, equitable relief is warranted. Cox requests that this Court give deference to the jury's verdict that Title II was violated, and the facts that underlie the verdict. Should it be of assistance to this Court, Cox requests the opportunity to supply proposed findings of fact from the jury trial based upon the trial transcripts. Cox further requests that this Court hold a bench trial to the extent that this Court needs to hear supplemental findings of fact on the grounds not before the jury, or to determine the scope of injunctive relief.

## I.     STANDARD

To obtain a permanent injunction, a "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between

the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]" <u>Id.</u>

To obtain an injunction, Cox need not show that the Department is likely to engage in violations involving precisely the same conduct. An injunction is justified if the Cox shows that similar violations are likely to occur. <u>See TRW, Inc. v. Fed. Trade Comm'n</u>, 647 F.2d 942, 954 (9th Cir. 1981). The commission of past illegal conduct, as proven to the jury here, is highly suggestive of the likelihood of future violations. <u>Five-Star Auto Club, Inc.</u>, 97 F. Supp. 2d 502, 536 (S.D. NY. 2000).

To satisfy the requirement of irreparable injury, a plaintiff must demonstrate a "real or immediate threat that they will be wronged again-a 'likelihood of substantial and immediate irreparable injury.'" <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 111 (quoting <u>O'Shea v. Littleton</u>, 414 U.S. 488 502 (1974)). Injunctions are appropriate with proof of a persistent pattern of misconduct. <u>Walters v. Reno</u>, 145 F.3d 1032, 1048 (9th Cir. 1998) ("Injunctive relief is appropriate in cases involving challenges to government policies resulting in a pattern of constitutional violations."); <u>Dempsey v. McQueeney</u>, 387 F. Supp. 333 (D. RI. 1975) (persistent pattern of police misconduct warranted injunctive relief).

The Prison Litigation Reform Act (PLRA) requires that the scope of injunctive relief is not overly intrusive. Under the PLRA, the Court must find that the prospective relief is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). "It should be noted, however, that the PLRA merely codifies existing law and does

not change the standards for determining whether to grant an injunction." <u>Smith v. Ark. Dep't of Corr.</u>, 103 F.3d 637, 647 (6th Cir. 1996); <u>see Gomez v. Vernon</u>, 255 F.3d 1118 (9th Cir. 2001).

"Although the PLRA's requirement that relief be 'narrowly drawn' and 'necessary' to correct the violation might at first glance seem to equate permissible remedies with [legal] minimums, a remedy may require more than the bare minimum [federal law] would permit and yet still be necessary and narrowly drawn to correct the violation." <u>Benjamin v. Fraser</u>, 343 F.3d 35, 54 (2d Cir. 2003). A remedy may be deemed to be properly drawn if it provides a practicable "means of effectuati[on]" even if such relief is over-inclusive. <u>Id.</u> (concluding comprehensive window repair program at prison was necessary to remedy due process violation and narrowly drawn "[g]iven the impracticability of the court examining each window").

## ARGUMENT

<div style="margin-left:2em">

I. <u>Equitable Relief Must be Granted Because the Jury Found a Violation, and the Defendants Have Not Changed Their Conduct or Evinced Any Willingness to Do So</u>

</div>

The jury found a violation of Cox's federal rights extending through March 10, 2017 after determining that the Department failed to make a reasonable accommodation to allow Mr. Cox to access the following prison programs or services: (a) procedures to obtain medical care; (b) procedures to report and resolve grievances; (c) procedures to report physical or sexual threats or assaults; (d) telephones. To this day, no one is assigned to assist Cox will filling out sick slips. 6-129. No one is assigned to help Mr. Cox will filling out grievances. 6-129. No one is assigned to help Mr. Cox with filling out canteen slips, or dialing the telephone, or accessing any other prison program or service. 6-129. Where the Defendants still refuse to change their treatment of Mr. Cox, prospective relief is warranted by the jury's verdict.

Further, Mr. Cox's developmental disabilities render him unable to access other programs and services that were not presented as damages claims to the jury, including the classification process, the disciplinary process, and access to canteen.

Cox seeks injunctive relief to "ensure that staff members' communications with [Cox, the] developmentally disabled prisoner[, is]"as effective" as their communications with non-disabled prisoners, and prevent the ongoing violations of Title II, and Cox's constitutional rights. <u>Clark v. California</u>, 739 F. Supp.2d 1168, 1179 (N.D. Ca. 2010) (quoting 28 C.F.R. § 35.160); <u>see eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006).

> i. <u>The Jury's Verdict Makes Clear that Cox has Suffered Irreparable Injury by the Department's Failure to Comply with Title II</u>

The jury verdict makes clear that Cox proved the violation of a federal right, and: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, including the ability to request medical assistance, the grievance process, the telephones, and the procedures to confidentially report sexual assaults; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability. <u>Parker v. Universidad de P.R.</u>, 225 F.3d 1, 5 (1st Cir. 2000). Prospective injunctive relief is necessary to prevent these ongoing violations of Title II because the Defendants have made no efforts to change their behavior. The trial evidence demonstrated that Attorney Lauren Petit attempted to intervene and request accommodations on behalf of Mr. Cox numerous times throughout the years, and nothing changed. The Complaint in this case was filed in 2013, and nothing changed. The ADA Coordinator of Cox's institution, NCCI Gardner, testified at the trial that she learned Cox could not read, write, or dial the telephone. Still, nothing has been done. The continued violation of Cox's constitutional rights is

a real threat because "[d]espite the supervisors' knowledge of this matter, … no corrective action followed." <u>Gomez</u>, 255 F.3d at 1129. Further, no policies or mechanisms are in place in the Department to ensure that Cox will have access to these prison programs and services. <u>Id.</u> As such, absent an injunction, likely harm, in the form of continued Title II violations, is inevitable.

Cox has demonstrated that the four violations of Title II found by the jury constitute irreparable injury. Cox addresses each in turn.

First, the inability to participate in the grievance process will continue to harm Mr. Cox without intervention from this Court. Denial of the ability to file grievances by failing to provide assistance with reading and writing has denied Cox his First Amendment rights. "Prisoners, however, have a First Amendment right to petition the prison for the redress of grievances…" <u>Schofield v. Clarke</u>, 769 F.Supp.2d 42 (D. Mass. 2011). The grievance process is the process that a prisoner has to follow in order to address a problem or an issue that they have within the prison system. 4-79. Mr. Cox does not understand how to participate in the grievance process, and is unable to read responses or write grievances. E.g., 4-94. The grievance process requires that the inmate obtain a grievance form, understand the form's written questions, respond to the form's written questions in writing, and request a remedy. 4-79. Inmates grieve everything from lost property to excessive force by correctional staff. The written policy dictates a time limit; if the inmate does not comply with the time limit, his complaint will not be received by the institution and will not be heard. 4-80. All responses to the inmate are provided to that inmate in writing. If the grievance is denied, it must be appealed in writing. 4-81. If the appeal is denied, the inmate receives notification in writing. 4-81. Access to the grievance process is crucial, as failure to comply with the grievance process can deny Mr. Cox from having his complaints heard, both at the institutional level and in court. 42 U.S.C. § 1997e(a) ("No action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). <u>See</u> <u>Armstrong v. Davis</u>, 275 F.3d 849 (9th Cir. 2001)(considering failure to accommodate disabilities at parole hearings where Board's parole notification, hearing, and appeals process depended to a great extent on written forms, Board not in substantial compliance with the ADA, and that it routinely denied the plaintiff class of their due process rights).

Here, despite the jury's verdict, Cox continues to be denied access to the grievance process by the Department's failure to accommodate his known cognitive disabilities. The Department has shown no willingness to assist Mr. Cox with the inmate grievance process. The ADA coordinator knows that Mr. Cox cannot read, write or dial a telephone on his own, and nothing has changed. 6-129 (ADA Coordinator testified that, even following specific request in 2010 for assistance with grievances, no one is assigned to help Cox with grievances). Without intervention from this Court, Mr. Cox will not be able to access the grievance process unless he has funds in his canteen account and is able to trade another inmate for their assistance. 5-128. This is irreparable injury. <u>See Prison Legal News v. Columbia County</u>, 942 F.Supp.2d 1068 (D. Or. 2013) (loss of First Amendment protections, even for minimal period of time, is irreparable injury).

Second, the inability to request medical care via the sick slip process will cause, and has caused, irreparable injury to Mr. Cox. <u>Assoc. Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity</u>, 950 F.2d 1401, 1412 (9th Cir. 1991) ("We have stated that an alleged constitutional infringement will often alone constitute irreparable harm.") (internal quotation marks, citation, and alterations omitted)). Mr. Cox has a constitutional right to access to medical care. <u>Boretti v.</u>

Wiscomb, 930 F.2d 1150, 1154-55 (deliberate indifference from needless pain without permanent injury after delaying medical care for five days); Clark, 739 F.Supp. 2d at 1177 (prisoner need not establish that he actually suffered a sufficiently serious deprivation must show only incarcerated under conditions posing a substantial risk). A sick slip is the method by which a prisoner requests medical attention. 4-87. Requesting medical attention must be done on a specific form. 4-87. Mr. Cox cannot write on the form himself, and so cannot request medical care. Although the Defendants attempted to persuade the jury into believing that Mr. Cox could simply approach medical personnel, the verdict makes clear that the jury did not believe the Defendants' evidence. Instead, the high volume of sick slips filed by other inmates on behalf of Mr. Cox made clear that unless Mr. Cox trades for help in filling out a sick slip, he is denied access to medical care. 5-128. This denial results, and will continue to result, in the unnecessary delay of treatment of Mr. Cox's medical ailments, leading to a constitutional violation and thus irreparable injury. See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976) (footnotes and citations omitted) (holding "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' … This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed).

Third, the continued inability to confidentially report a sexual assault because he cannot access the confidential reporting hotline will cause irreparable injury. The jury found that the failure to provide reasonable accommodations to access the "Sexually Abusive Behavior Prevention and Intervention Policy" ("SABPIP"), promulgated as 103 DOC 519, hotline prohibited Cox from independently or confidentially report his own sexual assaults and ultimate

rape. This risk remains ever present without this Court intervening and requiring the Defendants to provide a reasonable accommodation. To use the confidential PREA reporting line, an inmate must be able to dial the telephone. 2-168. Dialing the confidential PREA number puts an inmate directly into contact with IPS, without permitting another inmate to see or overhear their conversation as would occur if the conversation happened on the unit. 2-168. This hotline was put in place because reporting a sexual assault puts an inmate at risk in prison. 2-91. If another inmate overhears a report of a sexual assault, the inmate could be labeled a rat, which could endanger the reporting inmate's life. 2-91. The hotline allows an inmate, who may be embarrassed or in fear, to confidentially report the sexual assault. 2-100. Access to the confidential PREA hotline is designed to be confidential to avoid this danger. 2-92. Cox's inability to confidentially report a sexual assault leaves him vulnerable to attack, and denies him access to the PREA policy. This risk rises to the level of a constitutional violation. Brown v. Scott, 329 F.Supp. 2d 905, 912 (E.D. Mich. 2004)(finding, as to state of mind element of deliberate indifference, where plaintiff alleged certain group of inmates regularly assaulted vulnerable inmates, and rumor that plaintiff's cellmate was part of group and homosexual, trier of fact could find defendant was aware of facts from which inference could be drawn that risk of harm to plaintiff existed and disregarded risk).

Fourth, Cox cannot access a telephone for any communication, and that constitutes irreparable injury. Access to telephones is a program or activity within the meaning of the ADA. See Holmes v. Godinez, 311 F.R.D. 177 (N.D. Ill. 2015). See also Tucker v. Randall, 948 F.2d 388, 391 (7th Cir. 1991) ("[U]nreasonable restrictions on prisoner's telephone access may also violate the First and Fourteenth Amendments."). The Defendants telephone policy guarantees an inmate the right to access to a telephone. 103 CMR 482.07 (Inmates shall be allowed to make

unmonitored and unrecorded "collect/debit" telephone calls to their designated and pre-approved ordained clergymen, pre-approved and licensed psychologists, social workers, and/or mental health and human service professionals."). Unreasonable restrictions on prisoner's telephone access may violate the First and Fourteenth Amendments. Duran v. Elrod, 542 F.2d 998, 1000 (7th Cir.1976); Montana v. Commissioners Court, 659 F.2d 19, 23 (5th Cir.1981); Feeley v. Sampson, 570 F.2d 364, 374 (1st Cir.1978). Courts have long recognized that the ability to communicate privately with an attorney by telephone is essential to the exercise of the constitutional rights to counsel and to access to the courts. Murphy v. Waller, 51 F.3d 714, 718 & n.7 (7th Cir. 1995). The inability to contact his counsel and have a private conversation, or contact a family member, a sexual assault counsel, or any one else, without another inmate benevolently agreeing to assist him risks irreparable injury.

Inmates in the custody of the Department of Correction are permitted to use telephones to communicate with family, friends, legal counsel, etc. 4-83. Because of Cox's disability, he cannot dial the telephone to access that service. 4-52. Mr. Cox can only contact his attorneys, or family, or a sexual assault counselor if someone else helps him add the number to his pin, and dials the number for him. 4-52. The only persons who have ever helped Mr. Cox dial the telephone are other prisoners. 4-53. If an attorney needs to contact Mr. Cox, they cannot contact him directly unless they drive to visit him. An attorney would need to send Mr. Cox a letter, hope that another prisoner will read it for him, and hope that the prisoner would dial the telephone for him. 4-52-53.

Aside from the constitutional violation attendant to whole denial of access to the telephone, it is potentially dangerous to Cox that he relies upon other inmates to dial the telephone for him. 3-97. Department staff acknowledge that if another inmate knew Mr. Cox's

"pin number" it leaves him more likely to be manipulated because phone calls cost money and inmates could take advantage of him. 3-97. The Department staff knows that other inmates dial the telephone for Cox. 3-97 (Mitzi Peterson knew it occurred); 6-123 (Karen DiNardo knew it occurred). Yet, the Department appears unconcerned for Cox's safety and personal security and has not assigned anyone to help him. There is a real risk of future injury to Cox without prospective relief.

That Cox relies upon other inmates for grievances, sick slips, use of the telephone, and the PREA mechanisms to confidentially report his sexual assault, he remains in a vulnerable position. 4-96. As Attorney Petit explained, assistance from another inmate makes Cox vulnerable because "it is generally part of the prison culture that there is something expected in return, and so by needing to constantly ask other prisoners for help in things like making telephone calls or reading documents, he [is] essentially incurring a debt to other prisoners." 4-96. Here, because the Defendants have not changed their behavior as it relates to Cox, Cox has demonstrated "that he is realistically threatened by a repetition of [the violation]." Lyons, 461 U.S. at 109. Further, the Defendants have not even pretended that they intend to change their behavior in the future. Cf. Prison Legal News v. Columbia County, 942 F. Supp. 2d 1068 (D. Or. 2013) (By failing to change their behavior, the Defendants have failed to carry their heavy burden of demonstrating that there is "no reasonable expectation" of future repetitions of the wrongful conduct).

      ii.  Cox Has Suffered Irreparable Injury From Denial of Access to Other Programs and Services Not Presented as Damages Claims by the Jury

Equitable relief must be granted to prevent Cox's denial of access to prison programs and services that require his ability to read and write, and with which he is not provided a reasonable

accommodation. This Court limited the evidence presented to the jury to those Title II violations that might afford damages, which required the abrogation of sovereign immunity. In Cox's daily prison life, however, he has contended that he is unable to access those prison services that require the ability to read, write and dial a telephone. Cox seeks equitable relief on the following areas that were not presented to the jury (a) the disciplinary process; and (b) the classification process; (c) the ability to review his mail; (d) order food, or supplies from canteen. Because denial of access to these programs and services violates a federal law, the American's with Disabilities Act, and the denial of his access to these programs and services is irreparable harm.

A showing of irreparable harm requires "an actual, viable, presently existing threat of serious harm" that cannot adequately be remedied through money damages alone. Bio-Imaging Techs., Inc. v. Marchant, 584 F. Supp. 2d 322, 330 (D. Mass. 2008) (quoting Sierra Club v. Larson, 769 F. Supp. 420, 422 (D. Mass. 1991)). Here, the jury found that Cox is a qualified individual with a disability, and that he is denied access to prison programs and services because of his cognitive disabilities, which render him unable to comprehend, read, write or dial a telephone. While the scope of the trial was limited, the ADA applies to "all services, programs, and activities provided or made available by public entities." 28 C.F.R. § 35.102 (a). Here, through the testimony of Cox, documentary evidence and other witnesses Cox has and will demonstrate he was denied access to programs and services. The ongoing violations of Title II constitute irreparable harm, which will not stop absent intervention from this Court. Corporate Techs., Inc. v. Harnett, 943 F. Supp. 2d 233, 243 (D. Mass. 2013) ("ongoing breaches of a non-solicitation agreement can separately constitute irreparable harm").

First, Cox is denied access to the classification process by reason of his disability, and this ongoing Title II violation constitutes irreparable harm. Cox is denied the opportunity to

participate in the classification, and classification appeals process. <u>See Wolff v. McDonnell</u>, 418 U.S. 539, 555-56 (1974); 103 CMR 420.08(3) (h); 103 CMR 420.09(3). The classification process requires the ability to read, write and comprehend. 4-69-70. When an inmate is to be classified, he will get a written notice. 4-70. There is a classification board where the inmate can appear and represent his interests. 4-70. When an inmate receives a decision from the classification board, the decision is provided to the inmate in writing. 4-71. To understand the classification decision, the inmate would need to read it. 4-71. To appeal the classification decision, the inmate would need to be able to read the decision that notified him of his right to appeal. He would need to be able to get the appropriate form, and write his appeal. 4-71. The inmate would need to comply with the five-day time limit for appeal on this proper form. 4-72. The inmate would then receive another written response, which the inmate would need to be able to read to understand. 4-72. If any inmate would like to request an early classification hearing, this, too, must be in writing. 4-72. As with all regulations, for an inmate to understand his obligations under that obligation, and for an inmate to be able to comply with the regulation to get the relief sought, the inmate must be able to read and understand the regulation. 4-73. The ongoing Title II violation attendant to Cox's denial of access to the classification process will cause and has caused irreparable injury.

Cox is denied access to the disciplinary process by reason of his disability, and this ongoing Title II violation constitutes irreparable harm. "[T]he Due Process Clause requires that staff assistants provide effective communication to developmentally disabled prisoners during disciplinary proceedings where there is a protected liberty interest at stake." <u>Clark</u>, 739 F. Supp. at 1180. "'Due process [also] requires that a prisoner have 'an opportunity to present his views' to the official 'charged with deciding whether to transfer him to administrative segregation.'" <u>Id.</u>

(quoting <u>Toussaint v. McCarthy</u>, 926 F.2d 800, 803 (9th Cir. 1990) (quoting <u>Hewitt v. Helms</u>, 459 U.S. 460, 476 (1983)). <u>See</u> <u>Bonner v. Arizona Dept. of Corrections</u>, 714 F. Supp. 420 (D. Ariz. 1989) (failure to provide a sign language interpreter at a disciplinary hearing of a blind and deaf-mute prisoner denied due process). Cox's inability to participate in the disciplinary process, and communicate as meaningfully as his peers, is irreparable harm.

Cox is denied access to canteen by reason of his disability, and this ongoing Title II violation constitutes irreparable harm. Further, Cox cannot access the canteen service because of his inability to read and write. <u>See Clark</u>, 739 F. Supp. 2d at 1195-96 (failure to help developmentally disabled prisoners fill out canteen forms puts them at risk of abuse). Canteen is a prison store where an inmate buys hygiene materials, clothing, food and other property that is permitted in the housing institution. 4-75-76. Inmates also have bank accounts, with personal and savings accounts that can be used to purchase the items from canteen. 4-76. There is a written form for each inmate to decide what to purchase from canteen. 4-76. A request for canteen items requires the inmate to be able to read and write. The inmate needs to know what day canteen is ordered, how much is in their bank account, and must be able to do the basic math regarding how much the inmate wants versus how much money is in their account. 4-77. If the inmate is unable to do this basic math, and orders items costing more than is in their canteen account, the inmate will not receive any items. 4-78. When Mr. Cox seeks to order from canteen, he is unable to do this on his own. The person who orders canteen for him will order their own item on his canteen slip. Mr. Cox must trade something for help; often, he trades a pastry or chips or another canteen item. 5-129.

Cox cannot review his mail, or written communication provided to him by the Department, and as such cannot effectively communicate with his family, attorneys or the Department.

Inmates have a First Amendment right to receive mail. <u>Prison Legal News v. Lehman</u>, 397 F.3d 692, 699 (9th Cir. 2005). Interference with an inmate's mail constitutes irreparable harm because it infringes upon the First Amendment. <u>Prison Legal News v. Columbia County</u>, 942 F. Supp. 2d 1068 (D. Or. 2013). Here, because Cox cannot read any letters he receives, and because the Department offers him no assistance, the Department impedes Cox's ability to effectively communicate in the same manner afforded to other prisoners. This constitutes irreparable harm.

Further, Cox's reliance on other inmates continues to put Cox at risk, and in a vulnerable position. Relying upon other inmates in prison can lead to safety and security problems for that inmate. 4-74. This Court heard evidence that Mr. Cox has an IQ of 51, and is intellectually akin to a child. Mr. Cox is unable to read or write. 4-50-51. Mr. Cox is unable to dial a telephone. 4-52. Mr. Cox is extremely limited in his ability to express himself, and understand discussions. 4-48. He does not understand concepts, and his answers are often non-responsive to the questions being asked. 4-48. Mr. Cox does not appear to have a grasp of the classification process. 4-50. Parts of the classification process require the ability to read and write particular forms; Mr. Cox's inability to read or write denies him the ability to participate in those parts of the classification process. 4-51. Without assistance in the classification process, Mr. Cox waives his rights. 4-69. Requests for accommodation were made by Attorney Lauren Petit, who informed the Department of Cox's inability to read or write, and asked for assistance for him from someone other than prisoners. 4-64. In addition to the written exhibits, Ms. Petit verbally informed the Department that Mr. Cox could not read, write, and had cognitive limitations. 4-65. Mr. Cox informed the Department that these limitations impeded his ability to independently appeal his classification. 4-67. Nothing was done as a result of these conversations. 4-66. Since his incarceration in 2007, Cox has been forced to rely upon other inmates to accomplish the most

basic tasks that are required of all inmates in the Department's custody. Despite the jury's verdict that remains true, and will remain true unless this Court issues permanent injunctive relief.

Clark v. California parallels Cox's Title II violation, and the relief he seeks. 739 F. Supp. 2d 1168 (N.D. Ca. 2010). The Clark Court considered a class action by developmentally disabled prisoners who sought prospective relief, alleging that the State of California failed to accommodate their disabilities. Id. The Clark Court recognized that a developmentally disabled prisoner's literacy level can impede the ability to access prison programs and services, and that prisons must provide such services as necessary to afford the developmentally disabled prisoners an equal opportunity to participate in prison programs and services. Id. at 1179. Here, Cox faces the same problems as the plaintiffs in Clark. The Clark Court recognized the difficulties inherent in being unable to read and write in a prison atmosphere that requires these skills daily. The Court concluded that Clark plaintiffs did not receive "meaningful access" to disciplinary, administrative, and classification proceedings because the Defendants failed to provide assistance to ensure that communication in those proceedings was equally effective. Id. at 1230 (citing 28 C.F.R. § 35.160(a)). Further, the Court determined the "defendants have failed to maintain a grievance process that is 'readily available to all ... inmates.'" Id. (citing 28 C.F.R. § 40.3). Like in Clark, Cox seeks prospective relief to give him to access the Department's programs and services, which require the ability to read, write and self-advocate, because he is otherwise unable to participate due to his severe cognitive disability.

Some evidence on these areas was presented to the jury. It was clear that Cox receives all of his help from inmates. When Mr. Cox has asked for help, the response from correctional officers, medical and mental health staff has been that they did not help him and told him to go back to his unit. 5-133. No one is assigned to help Mr. Cox, and he cannot accomplish these tasks on his

own. The Department's regulations requiring the ability to read and write are published online and readily available to this Court. However, should this Court require additional evidence, Cox would adduce additional evidence to show that the programs, and services depend to a great extent on written forms. Cox is unable to understand the content of these forms, and, as a consequence, he has and will likely continue to waive his right to certain hearings, or fail to invoke his rights on appeal, or be denied access to programs and services. Further, Cox's cognitive disabilities make it extremely difficult for him to understand and self-advocate.

Cox has demonstrated an ongoing violation of Title II in the denial of access to these prison programs and services by reason of his disability. Injunctive relief is appropriate. However, should this Court require additional evidence, Cox requests a bench trial.

      iii. <u>The Monetary Damages Do Not Compensate that Injury or Prevent the Ongoing Injury</u>

Money damages are inadequate because the violations are ongoing, and Cox is serving a life sentence. "In cases, like this one, that involve constitutional violations" where irreparable harm is present, monetary damages are not appropriate. <u>Prison Legal News</u>, 942 F. Supp. at 1091; <u>Nelson v. Nat'l Aeronautics & Space Admin.</u>, 530 F.3d 865, 882 (9th Cir. 2008) ("Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm."), <u>rev'd and remanded on other grounds</u>, 131 S. Ct. 746 (2011). Further, Cox will live in prison for the remainder of his natural life, and money cannot compensate the daily difficulties that the Department forces him to endure.

Money damages do not allow Mr. Cox to access these prison programs or services, and only serve to compensate him for the past harms rather than prevent the future ones. "'With substitutionary remedies, plaintiff suffers harm and receives a sum of money. Specific remedies seek to avoid this exchange. They aspire to prevent harm, or undo it, rather than let it happen and

compensate for it.'" <u>Donovan v. Philip Morris USA, Inc.</u>, 268 F.R.D. 1 (D. Mass. 2010)(quoting

Douglas Laycock, <u>The Death of the Irreparable Injury Rule</u>, 103 Harv. L. Rev. 687, 696 (1990)).

The exclusion from the programs and services continues despite the jury's monetary award. Cox

seeks prospective relief to prevent this further harm. <u>Id.</u> at 25 ("in some circumstances, money

cannot adequately compensate, and an injunction is therefore required to remedy the harm. … If

the nuisance is continuing, an injunction is appropriate because damages will not fully remedy

the harm.").

iv.  <u>On Balance, A Remedy in Equity is Warranted</u>

The third factor requires the court to balance the equities. "In assessing whether the

plaintiff[ has] met this burden, the district court has a duty to balance the interests of all parties

and weigh the damage to each." <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1138 (9th Cir. 2009)

(internal quotation marks, citation, and alteration omitted). Here, the Defendants have shown no

willingness to conform their actions to Title II of the American's With Disabilities Act; in fact,

that Cox remains in the same position as he was in 2013 demonstrates that they will not. Further,

the resources at issue for the Defendants is minimal. The assistance Cox seeks, including staff

assistants and inmate companions, is already in place in the Department for other inmates. The

potential for constitutional hardship is far greater than the insignificant impact on the

Department's time and resources.

v.  <u>The Public Interest is Not Affected and Would Not be
     Disserved by a Permanent Injunction</u>

Fourth, "[t]he public interest inquiry primarily addresses [the] impact on non-parties

rather than parties." <u>Sammartano v. First Judicial Dist. Court</u>, 303 F.3d 959, 974 (9th Cir.2002).

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on

non-parties, the public interest will be at most a neutral factor in the analysis rather than one that

favors granting or denying the preliminary injunction." Stormans, Inc., 586 F.3d at 1138-39 (internal quotation marks and citation omitted). Further, the public has an interest in ensuring that the Constitution is upheld. DeVito v. Rhode Island Solid Waste Management Corp., 770 F. Supp. 775, 779 (D. RI. 1991) There will be no real impact here on non-parties, and so the public interest factor is neutral. If anything, Cox's ability to effectively communicate with non-parties helps non-parties, and does no harm.

Further, because of the monetary risk to the tax-payer funded Department of Correction, the taxpayers are best served by a narrowly tailored injunctive relief. This is so because "virtually every interaction between prison officials and disabled inmates potentially exposes the State[] to liability . . . unless the State[] promptly provide[s] reasonable accommodation." Chase v. Baskerville, 508 F. Supp. 2d 492, 505 (E.D. Va. 2007)(citing Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 289-90 (1st Cir. 2006)).

Thus, as to these specific claims, all that is left for this Court to consider is the scope of the injunctive relief. Cox addresses the scope in section (c).

II.    The Proposed Equitable Relief Is Narrowly Tailored to Prevent the Injury

An injunction remains necessary to correct a current and ongoing violation of the violations of Title II of the American's With Disabilities Act. 18 U.S.C. § 3626(b)(3). "While the PLRA requires remedies that are narrowly tailored and the least intrusive to remedy the rights violations, 'it is also the duty and responsibility of this Court to ensure that constitutional rights are fully vindicated.'" Clark, 739 F.Supp.2d at 1234 (quoting Madrid v. Gomez, 889 F. Supp. 1146, 1282 (N.D. Cal. 1995)). Cox requests that this Court Order a trained staff assistant or trained inmate companion to meet with Cox daily, and a trained staff assistant to advocate for

Cox in administrative, disciplinary and classification processes. The relief sought is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626.

At trial, it became apparent that the Department of Correction already has trained inmate companions and trained staff to assist persons like Mr. Cox. The Department simply refuse, for whatever reason, to assist Mr. Cox. The Department has inmate companions that are offered to other inmates, but not Mr. Cox. 4-56. Inmate companions can help with socialization, reading and writing, and are specifically assigned and selected by supervisory staff. 4-56; 6-118. The inmate companion is trained and is "almost a personal care attendant for inmates." 6-118. Inmate companions assist with activities of dialing living. 3-96. The cost of an inmate companion is minimal. 3-98 (at most, the companions are paid $3 per day).

The Department regulations also offer "staff assistants" to be specifically assigned to inmates who are unable to read and write. 4-57; Ex. 57. The ADA Coordinator at NCCI Gardner testified that they could have someone assigned to assist Mr. Cox. 6-114-15. To date, no one has been assigned to do so. In fact, at trial, the ADA Coordinator acknowledged that it is possible for Mr. Cox to receive a special assistant. A special assistant would help him read and write (if that is what he was requesting). 6-120. A special assistant would help him dial a telephone (if that was necessary, which it is). 6-120; 6-123.

Cox suggests that this Court require the Department to provide Mr. Cox with a staff assistant, who is available daily to help him with reading, writing, understanding the rules and regulations contained in the written policies, and advocating for himself when his cognitive limitations prohibit him from doing so. A staff assistant is preferred simply because of the security concerns inherent in having another inmate charged with dialing the telephone for him.

Alternatively, however, an inmate companion, who could be specifically trained and supervised, could serve the same function. Mr. Cox's limitations require this assistance in daily life so that he can fill out grievances when necessary, review mail or call his attorney, review correspondence from the institution, order canteen items without needing to trade his food away, and do all of the other tasks that inmates do every day within the Department. A trained assistant would greatly assist Mr. Cox in accessing the programs and services that he is presently denied access.

Like in <u>Clark v. California</u>, Cox requests that the Department "not only provide staff assistants to [Cox, the] developmentally disabled prisoner[,] in disciplinary, administrative, and classification proceedings, but they also must ensure that those staff assistants are providing [Cox] with effective communication." 739 F. Supp. 2d 1179. This is necessary, as <u>Clark</u> recognized, because "[o]nly through effective communication can defendants guarantee that developmentally disabled prisoners have meaningful access to these proceedings and, thus, satisfy their obligations to [Cox] under federal law." <u>Id.</u>

Like in <u>Clark</u>, the staff assistant should: "(1) inform [Cox] of his or her rights and ensuring that [he] understands the proceeding to the best of his [] ability; (2) help [Cox] prepare for the hearing; (3) represent[] [Cox's] position at the hearing; (4) ensur[e] that [Cox's] position is understood; (5) ensur[e] [Cox] understands, to the best of his ability, the decision reached; (6) provid[e] the hearing official with information related to [Cox's] developmental disability and adaptive support services required; (7) be[] present at a disciplinary hearing and all interviews related to the hearing; and (8) not giv[e] legal counsel or specifying the position [Cox] should take. 739 F. Supp. 2d at 1205.

Both of these options are already available in the Department, and do not require any major change to the Department's present functioning. Of course, the injunctive relief must be no broader than necessary to remedy the federal law violations. The proposed prospective relief is sufficiently narrow to "avoid unnecessary disruption to the state agency's 'normal course of proceeding' " and is no broader than necessary to remedy the violations. Ashker v. California Dep't of Corrections, 350 F.3d 917, 921-22, 924 (9th Cir. 2003) (holding that enjoining enforcement of book labeling policy was not too broad because it closely matched the identified violation and did not interfere with the prison's policy of searching each package) (quoting Gomez v. Vernon, 255 F.3d 1118, 1128 (9th Cir. 2001). Further, injunctive relief requiring the Defendants to comply with federal law and regulations cannot be viewed as unnecessary, overbroad or over-intrusive because it is only what is already required. Handberry v Thompson, 446 F3d 335, 348 (2d Cir. 2006)( "We do not see how this prospective relief, which tracks the statutory language of the IDEA's Child Find requirement precisely, can be viewed as unnecessary, overbroad or over-intrusive.").

There are accommodations that are reasonable, possible, and would afford Cox the opportunity to participate in and benefit from services that are afforded to other inmates. 28 C.F.R. § 35.130(b)(1); see 28 C.F.R. § 35.149. The Department is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." Id. § 35.130(b)(7); see McGary v. City of Portland, 386 F.3d 1259, 1265-67 (9th Cir. 2004). A public entity, like the D.O.C., must "operate each service, program, and activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by

individuals with disabilities." 28 C.F.R. § 35.150(a). Cox only asks that the Department comply with federal law.

Finally, Cox seeks prospective relief not subject to the PLRA's temporal limitations, § 3626(b)(3), which provides that:

> Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626 (b)(3). This is warranted because Cox's disabilities will never change or improve. This is further warranted because of the consistent change in staffing at DOC headquarters and facilities means that no consistency can be counted upon.

**CONCLUSION**

Mr. Cox has spent more than a decade in the Department's custody, unable to access prison programs and services, and without assistance. Attempts to request accommodations for his cognitive disabilities before litigation were ignored. 4-91. Mr. Cox filed suit in 2013, and still nothing changed. Mr. Cox won a jury verdict in March of 2017, and still, nothing has changed. The ADA Coordinator at his current institution knows he cannot read, write or dial a telephone. Still, nothing has changed. The ADA coordinator agreed that, dependent upon the nature of Mr. Cox's request, there could be safety or security issues in asking another inmate to help but nonetheless permits Cox to do so. 6-116. Cox, with an IQ of a four-year-old child, needs help. See Clark, 739 F. Supp. 2d at 1193 (recognizing that developmentally disabled inmates are often unable to advocate for themselves). It is the Department's obligation to provide that for him, but since 2007 they have refused. All of the evidence clearly demonstrates that the Department will take no action to come into compliance with the ADA unless so ordered by this Court.

Cox requests that this Court find "that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Id. § 3626(a)(1)(A). After declaring the actions of the Department of Correction in violation of Title II of the American's with Disabilities Act, Cox requests that this Court grant injunctive relief to Mr. Cox, to include the daily assignment of a trained staff member or inmate companion to assist him with reading, writing, dialing the telephone, and advocacy in prison processes as this request is narrowly tailored to remedy the offensive acts of the Defendants, and passes muster under the PLRA. See Gomez, 255 F.3d at 1130 (considering scope of injunction, approving that it denied class-wide relief and recognizing relief was limited to remedying complained of acts).

Respectfully Submitted,
WILLIAM COX
By His Attorneys,


/s/ Rosemary Curran Scapicchio
Rosemary Curran Scapicchio
107 Union Wharf
Boston, MA 02109
BBO # 558312
(617) 263-7400
Scapicchio_attorney@yahoo.com



/s/ Amy L. Codagnone
Amy L. Codagnone
107 Union Wharf
Boston, Massachusetts 02109
(857) 265-2166
Codagnone.Attorney@gmail.com
BBO # 679716

**CERTIFICATE OF SERVICE**

     I hereby certify that a true copy of the above document was served upon the attorney of record for each party and upon any party appearing pro se by complying with this Court's directives on electronic filing.

Dated: <u>April 24, 2017</u>               Signed: <u>/s/ Amy Codagnone</u>