## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————————

| | |
|---|---|
| **WILLIAM COX,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **13-10379-FDS** |
| ) | |
| **MASSACHUSETTS DEPARTMENT OF** ) | |
| **CORRECTION,** ) | |
| ) | |
| **Defendant.** ) | |

———————————————————————————)

## MEMORANDUM AND ORDER ON
## PLAINTIFF'S MOTION FOR COSTS AND ATTORNEYS' FEES

**SAYLOR, J.**

I.   **Introduction**

        This is an action brought by a mentally-disabled state prisoner asserting claims under the

Americans with Disability Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  Plaintiff William Cox

brought this action against defendant Department of Corrections ("DOC") contending that he

was the victim of discrimination on the basis of disability.  Among other things, Cox contended

that he was denied adequate access to (1) procedures to obtain medical care, (2) procedures to

report and resolve grievances, (3) procedures to report physical or sexual assaults, and (4) use of

telephones.  After a trial, a jury found in his favor on those claims, and awarded him money

damages.[1]  Cox has moved for an order awarding attorneys' fees, litigation costs, and other

expenses pursuant to 42 U.S.C. § 12205.  For the following reasons, the motion will be granted

in part and denied in part.

---

        [1] Cox sought both money damages and injunctive relief in this proceeding.  At the March 2019 hearing on
the motion for costs and attorneys' fees, the parties reported that they have reached a settlement as to the form of
injunctive relief.

II.     **Background**

On February 25, 2013, Cox brought suit against the DOC and a variety of DOC officials in their individual capacities, alleging that defendants' deliberate indifference resulted in violations of the Eighth and Fourteenth Amendments.

After a series of motions, the Court dismissed the majority of the claims. The only remaining claims were a § 1983 claim against Steven J. O'Brien, the Superintendent of the Massachusetts Department of Correction, in his official capacity, and an ADA claim against the DOC. The jury returned a verdict in favor of O'Brien, but found against the DOC on most of the ADA claims, finding that plaintiff lacked meaningful access to (1) procedures to obtain medical care; (2) procedures to report and resolve grievances; (3) procedures to report physical or sexual threats or assaults; and (4) use of telephones. (ECF No. 199 at 1-2).[2]

The jury awarded damages in the amount of $250,000, broken down between the different claims as follows: $50,000 for lack of access to procedures to obtain medical care; $25,000 for lack of access to procedures to report and resolve grievances; $150,000 for lack of access to procedures to report physical and sexual threats or assaults; and $25,000 for lack of access to telephones. (*Id.* at 3).

The DOC then filed a motion for judgment notwithstanding the verdict. The Court granted the motion in part as to the claim for access to telephones. The DOC also filed a motion for remittitur. The Court granted the motion in part as to the claim for procedures to report and resolve grievances, lowering that award from $25,000 to $1,000. The Court thus lowered the overall award from $250,000 to $201,000.[3]

---

[2] The jury found for defendants on a claim that Cox's disability prevented him from having meaningful access to showers.

[3] Cox accepted the remittitur, but has indicated that he intends to appeal the Court's overturning the verdict

Cox has moved for an award of costs and attorneys' fees pursuant to 42 U.S.C. § 12205 and Fed. R. Civ. P. 54(d).  He seeks a total of $731,307.50 in attorneys' fees and $5,039.37 in expenses.[4]  Attorney Rosemary Scapicchio has requested (1) compensation for 541.8 hours of legal work at a rate of $750 per hour and compensation for 4.6 hours of travel at a rate of $175 per hour, for a total award of $407,155 in attorney's fees, and (2) $4,960.93 in expenses. Attorney Amy Codagnone has requested (1) compensation for 919.7 hours of legal work at a rate of $350 per hour and compensation for 12.9 hours of travel at a rate of $175 per hour, for a total award of $324,152.50 in attorney's fees, and (2) $78.44 in expenses.

DOC has opposed the motion as unreasonable, excessive, and based on duplicative work. It requests that the Court reduce the rates, apply lower rates for "non-core" time, and reduce the overall award.

## III.  Analysis

The ADA provides that "[i]n any action . . . commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 12205.  In the First Circuit, courts follow the so-called "lodestar" method for calculating reasonable attorneys' fees.  *Tenn. Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994); *see also Hutchinson v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011).  The lodestar method involves "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure."  *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In fashioning the lodestar, the first step is to calculate the number of hours reasonably

---

as to the telephone access issue.

[4] DOC's memorandum states that the total amount of fees requested is $731,385.94.  It is not clear how this number was calculated, or why it differs from the fee total provided by Cox:  $731,307.50.

expended by the attorneys for the prevailing party, excluding those hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *see also Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984) (explaining that a court should subtract "hours which [are] duplicative, unproductive, excessive, or otherwise unnecessary."). "[T]he court has a right—indeed, a duty—to see whether counsel substantially exceeded the bounds of reasonable effort." *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988) (internal quotation marks and citation omitted).

After determining the number of hours reasonably expended, the second step in calculating the lodestar requires a determination of a reasonable hourly rate—a determination that is benchmarked to the "prevailing rates in the community" for lawyers of like "qualifications, experience, and specialized competence." *See Gay Officers League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001). In determining a reasonable hourly rate, a court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Grendel's Den*, 749 F.2d at 951. The moving party bears the burden of establishing an attorney's level of skill and experience, and when that party fails to provide documentation as to the attorney's qualifications, a court may reduce the hourly rate. *See, e.g.*, *Martinez v. Hodgson*, 265 F. Supp. 2d 135, 142 (D. Mass. 2003).

After determining the reasonable number of hours and hourly rate, the court may adjust the lodestar upward or downward based on a number of factors. *Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011). Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of

4

the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Diaz v. Jiten Hotel Mgmt., Inc.*, 741 F.3d 170, 177 n.7 (1st Cir. 2013) (quoting *Hensley*, 461 U.S. at 430 n.3).

Plaintiff seeks to recover a total of $736,346.87 in attorneys' fees and costs. That amount is broken down as follows:

| Attorney | Work, Travel, or Expenses | Hourly Rate | Hours | Subtotals |
|----------|---------------------------|-------------|-------|-----------|
| Scapicchio | Work | $750 | 541.8 | $406,350.00 |
| Scapicchio | Travel | $175 | 4.6 | $805.00 |
| Scapicchio | Expenses | N/A | N/A | $4,960.93 |
| Codagnone | Work | $350 | 919.7 | $321,895.00 |
| Codagnone | Travel | $175 | 12.9 | $2,257.50 |
| Codagnone | Expenses | N/A | N/A | $78.44 |

In its opposition, the DOC raises four principal objections. It contends that a reduction to the number of hours is warranted because (1) Cox only prevailed on some of his claims, (2) his attorneys were inefficient and did not maintain proper billing records, and (3) his attorneys failed to differentiate between "core" and "non-core" work. The DOC further contends that (4) plaintiff's attorneys' hourly rates were unreasonably high. The Court will address each objection in turn.

A.     **Attorneys' Fees**

1.     **Reduction for Hours Spent on Failed Claims**

The DOC first contends that no fees should be awarded for plaintiff's unsuccessful Section 1983 claim against defendant Stephen O'Brien.

> [Where] a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees [in civil rights cases] whenever it was reasonable for

> a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with
> devotion and skill.  Again, the most critical factor is the degree of success
> obtained.

*Hensley*, 461 U.S. at 436.  Where claims are "unrelated" or "severable," they must "be treated as

if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on

the unsuccessful claim."  *Id.* at 435.  Claims are unrelated or severable when they "rest on

different facts and legal theories."  *Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 339 (1st

Cir. 1997).  However, where the "plaintiff's claims for relief . . . involve a common core of facts

or [are] based on related legal theories," the "lawsuit cannot be viewed as a series of discrete

claims.  Instead, the district court should focus on the significance of the overall relief obtained

by the plaintiff in relation to the hours reasonably expended on the litigation."  *Hensley*, 461 U.S.

at 435.

The Court agrees with plaintiff that the unsuccessful Section 1983 claim was inextricably

tied to the successful ADA claim:  both were predicated on the DOC's failure to provide him

access to procedures to obtain medical care, report and resolve grievances, and report physical or

sexual assaults.  Accordingly, the Court will not reduce the number of hours on that basis.

### 2.    Reduction for Inefficient Work and Billing Records Issues

Next, the DOC requests that the Court reduce the fee award for an excessive number of

hours spent by plaintiff's counsel on this litigation and counsel's inadequate billing records.

The Court agrees with defendant that a reduction is warranted for an unreasonable

amount of hours incurred.  For example, plaintiff's counsel billed a combined 179.5 hours

responding to defendant's motion for summary judgment, which the Court finds excessive in

light of the relatively limited scope of that motion.  (Def. Ex. 2).  Plaintiff's counsel also billed a

combined 67.3 hours for drafting the complaint and a combined 66 hours on opposing a

relatively straightforward motion to dismiss.  (*Id.*).[5]  Furthermore, an excessive amount of time appears to have been spent on relatively mundane or straightforward tasks, such as putting together case files, summarizing transcripts, and pulling exhibits, work that could have been performed by paralegals or junior attorneys.[6]

Defendant seeks a reduction to a total of 10 hours to research and draft the complaint, 10 hours for opposing the motion to dismiss, and 30 hours for opposing the motion for summary judgment.  Defendant further notes that less than a quarter of the pages in plaintiff's memorandum opposing summary judgment addressed the ADA claim, the only claim in which plaintiff prevailed at trial.

The Court agrees that the amounts at issue are excessive, but the cuts requested by defendants are likewise excessive.  Under the circumstances, and mindful of the First Circuit's caution that district courts are directed to "zealously guard against any propensity to over-staff litigation" in the context of a fee-shifting statute, the Court will apply a 15% reduction in the number of hours expended (not including travel time, which the Court finds to be reasonable). *Lipsett v. Blanco*, 975 F.2d 934, 939 (1st Cir. 1992) (citation omitted).

A further reduction is warranted in light of counsel's time-recording practices.  A fee-seeking attorney is required to exercise "billing judgment" and "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  *Hensley*, 461 U.S. at 437; *see also Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir. 1978) ("As for the future, we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorneys' fees in a suit in which plaintiffs were only partially

---

[5] The DOC mistakenly stated that plaintiff's attorneys billed 76 hours on the motion to dismiss.

[6] For example, on September 4, 2015, attorney Scapicchio spent seven hours summarizing deposition testimony.  She also billed a total of 20 hours on file review and pulling exhibits on February 18 and 19, 2017.

successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.").  "Attorneys who anticipate requesting their fees from the court would be well advised to maintain detailed, contemporaneous time records that will enable a later determination of the amount of time spent on particular issues."  *Wojtkowski v. Cade*, 725 F.2d 127, 130 (1st Cir. 1984); *see also, e.g., Grendel's Den*, 749 F.2d at 952; *Lipsett*, 975 F.3d at 938; *Burke v. McDonald*, 572 F.3d 51, 63 (1st Cir. 2009).  Those records should describe "with particularity the date, activity and time spent on each litigation task."  *Rosie D. v. Patrick*, 593 F. Supp. 2d 325, 329 (D. Mass. 2009).

"The prevailing party has the burden of proving the reasonableness of the hours claimed.  Where that party furnishes time records that are ill-suited for evaluative purposes, the court is hampered in ascertaining whether those hours were excessive, redundant, or spent on irrelevant issues.  In such a circumstance, the court may adjust those entries to achieve an equitable result."  *Torres-Rivera*, 524 F.3d at 340 (internal citations omitted); *see also id.* at 336 (where entries are "too generic" to permit the court to evaluate for "excessiveness, redundancy and the like," the court "may either discount or disallow those hours.").  The court may "eliminate billed hours that are not precise enough to assess whether the time spent was reasonable" or "engage in a global reduction."  *Rogers v. Cofield*, 935 F. Supp. 2d 351, 363 (D. Mass. 2013).

"The problem with imprecise records is that 'they fail to allow [ ] the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent."  *Parker v. Swansea*, 310 F. Supp. 2d 376, 392 (D. Mass. 2004) (alteration in original); *see also Lipsett*, 975 F.2d at 938 (discounting 81.2 hours where time entries were "so nebulous" that they failed to allow the opposing party to challenge their accuracy or reasonableness) (citation omitted);

*Phetosomphone v. Allison Reed Grp., Inc.*, 984 F.2d 4, 7 (1st Cir. 1993) (time entries for "library" and "letters to opposing counsel" excluded because they "left the court guessing about their purposes."); *Furtado v. Bishop*, 635 F.2d 915, 922 (1st Cir. 1980) (excluding time where records were ambiguous or inconsistent); *Walsh v. Boston Univ.*, 661 F. Supp. 2d 91, 107 (D. Mass. 2009) (eliminating time where entries did not adequately describe task performed).

In many instances, attorney Scapicchio's time entries are insufficiently precise to allow much in the way of analysis. For example, her entries on October 5 and 6, 2015, simply state "research"; the entry on May 31, 2016, states "research on claims"; and the entry on December 28, 2016, states "research for trial brief."

Furthermore, a highly disproportionate number of entries for attorney Scapicchio are expressed in terms of whole hours, without fractions. Thus, for example, seven of the eight entries for the trial are "12.0 hours," and the eighth is for "8.0 hours." In the immediate run-up to the trial, there are six daily entries of "10.0 hours" and multiple others in whole-hour increments.

A further issue arises out of counsel's practice of block billing. "Block billing is an industry term used to describe the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 354 (D. Mass. 2013) (citation and internal quotation marks omitted). "When confronted with block billing, courts will apply a global reduction to the lodestar hours . . . after the specific deductions." *In re Volkswagen and Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 176 (D. Mass. 2015) (citation and internal quotation marks omitted).[7]

---

[7] The Court is considerably more indulgent as to the practice of block billing during trial, where counsel is

Many of plaintiff's attorneys' larger billing entries were block billed.  To cite only a few examples, attorney Scapicchio billed 2.1 hours in a single entry on January 17, 2017, which stated:

> Reviewed draft of Response to DOC Memorandum of Law[.]  Reviewed draft of motion for Leave to File Opposition to "Trial Brief Reply" Raising Sovereign Immunity for the First Time

Similarly, attorney Codagnone billed six hours in a single entry on February 25, 2013, which stated:

> Civil cover sheet done, putting exhibits in order.  Draft Notice of Appearance, Filed complaint, sealed exhibits in courthouse, motion to file sealed exhibits, and efiled other exhibits.  Emailed Lauren Petit re: Disability Law Center Exhibits

She also billed eight hours in a single entry on July 19, 2016, which stated:

> MIL research/ began list, researching and generating list of jury instruction requests.  spoke to RCS, Began draft of pretrial memo, gathering summary judgment exhibits necessary for trial, witness list, etc.

The use of block billing significantly hinders the Court's analysis of the reasonableness of the time spent on each task.

Counsel were surely aware that they would be seeking attorney's fees should plaintiff prevail, and were obligated to record time entries in a manner sufficiently accurate to permit the court to conduct a review and to impart confidence in the accuracy of the entries.  The records here fall well short of that standard.  Rather than attempt to make specific individualized adjustments, the Court will take that factor into account across the board in determining a reasonable fee.

Accordingly, the Court will apply a further sanction of a 10% reduction in the number of

---

normally subject to considerable time pressures and is required to handle a great multiplicity of tasks.

hours expended by attorney Codagnone, with the exception of travel time.  *See Torres-Rivera*, 524 F.3d at 340 (finding no error in district court's application of a 15% global reduction of fee award as a sanction for block billing).  The Court will apply a smaller 5% reduction in the number of hours expended by attorney Scapicchio, again with the exception of travel time, to account for the various issues concerning time records.

### 3.    "Core" and "Non-Core" Tasks

The DOC requests that the Court reduce the number of hours billed for time spent on "non-core" tasks such as administrative tasks and travel.  Courts sometimes apply differential rates to fees for "'core' tasks like 'legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders'" and "'non-core' tasks, which are 'less demanding,' such as 'letter writing and telephone conversations.'"  *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015) (quoting *Brewster v. Dukakis*, 3 F.3d 488, 492 n.4 (1st Cir. 1993)).  However, "[w]hile the core/non-core distinction may be a useful tool for fashioning a reasonable fee in some cases, the choice of whether to employ that distinction is within the sound discretion of the district court."  *Id.* at 639.

Here, DOC contends that the Court should exercise its discretion and employ reduced rates for the time that each attorney spent on "non-core" work.  Having identified these allegedly "non-core" entries and applying the reduced hourly rates, it contends that reductions of $24,800 and $37,065 are warranted for "non-core" work performed by attorney Scapicchio and attorney Codagnone, respectively.  (Def. Ex. 1).

Here, counsel have already reduced their hourly rate for travel time.  And under the circumstances, the Court sees no need to apply the "core" and "non-core" distinction in applying a rate reduction on top of the reductions that will be made for other reasons.  *See Matalon*, 806

F.3d at 639 (finding no abuse of discretion in decision to "employ an across-the-board rate cut, rather than using two-tiered rates to determine the lodestar amount.").  Accordingly, the Court finds that no further discount in the number of hours is appropriate.

### 4.    Hourly Rates

Finally, the DOC contends that the billing rates for plaintiff's attorneys were unreasonable.  A party cannot "show merely that higher rates exist in the market." *Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 105 (D. Mass. 1998).  In determining a reasonable hourly rate, a court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Grendel's Den*, 749 F.2d at 951.  In order "[t]o inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The Court's determination of the reasonableness of the requested rate must be "based on evidence other than the attorneys' [own] affidavits." *Deary v. City of Gloucester*, 9 F.3d 191, 198 (1st Cir. 1993).

Attorney Scapicchio has been a practicing attorney for 27 years, and has extensive experience in state and federal courts, litigating more than 100 felony criminal cases and several complex multimillion dollar civil cases.  (Scapicchio Aff. ¶¶ 2-3).  She contends that in 2009 her normal fee was $500 per hour.  (*Id.* ¶ 22).

Attorney Codagnone graduated from Suffolk Law School in 2010.  (Codagnone Aff. ¶ 1). She worked for attorney Scapicchio until January 2013, when she opened her own law office. (*Id.* ¶ 5).  She has tried a dozen criminal cases, and routinely appears on behalf of criminal

clients in state courts on evidentiary motions and other matters.  (*Id.* ¶¶ 10-12).

Attorney Scapicchio has requested an hourly rate of $750, and attorney Codagnone has requested an hourly rate of $350.[8]  They have supported their billing rates in a number of ways.

First, they have provided affidavits stating that they are experienced attorneys who bill at rates of $750 (or higher) and $350 per hour, respectively.  (*See generally* Scapicchio Aff.; Codagnone Aff.).

Second, they have provided affidavits from experienced attorneys who are familiar with them and the purported prevailing rates in the Boston area in 2018.  (*See* Sinsheimer Aff.; Hedges Aff.).  Those affidavits state that it is reasonable for plaintiff's attorneys to bill at their respective rates.  (*Id.*).

Third, they cite to an award they received eight years ago in this district, in which Judge Gertner awarded attorney Scapicchio a $500 hourly rate, and awarded attorney Codagnone hourly rates of $90 as a law student and $190 as a recently admitted attorney.  *See Drumgold v. Callahan*, 806 F. Supp. 2d 428, 431-32 (D. Mass. 2011).  They contend that those rates should change with time to reflect the market and the experience they have gained since 2011.  (Mem. in Supp. at 15-16).

Finally, they have cited reported cases in this district involving the ADA and other civil-rights claims in which counsel were awarded hourly rates ranging from $250 to $445.  (*Id.* at 14). They have also cited non-civil rights cases involving complex federal litigation where experienced and well-regarded attorneys have received rates above $600, and civil-rights cases in other districts in which hourly rates ranging from $550 to $700 were awarded to experienced attorneys.  (*Id.* at 14-15).  However, this last category of evidence, like the attorney affidavits, is

---

[8] Both have billed at $175 per hour for time spent travelling to correctional institutions.

of limited usefulness, because it represents varying circumstances and a broad range of cases.
*See AutoZone, Inc.*, 934 F. Supp. 2d at 358 (finding that, given the discrepancy in rate awards
between judges, "appealing to awards by other judges is moderately helpful, at best" in
evidencing a reasonable fee rate).

The DOC requests that the Court reduce attorney Scapicchio's rate to $350 and attorney
Codagnone's rate to $300.  It cites to other ADA cases in this district where the court awarded
hourly rates of $300 and $350—the former for a case that settled short of trial, and the latter for a
more complex case that went to trial.  (Mem. in Opp. at 9).  It has also cited to an order on fees
and interest in a similar civil-rights case brought by a prisoner in this district.  In that case, Judge
Sorokin reduced a $400 requested hourly rate to $350 because the factual and legal issues were
not complex.  *See Giorgio v. Duxbury*, 2016 WL 3983232, at *2-3 (D. Mass. July 25, 2016).

The Court agrees with defendant that the hourly rates charged are unduly high, and in
particular they are out of step with rates that other judges in this district have found appropriate
in ADA or similar prison litigation.

For example, in *Hutchinson*, an ADA case, the First Circuit affirmed Judge Ponsor's
award of $425 per hour to plaintiff's lead counsel, a partner in WilmerHale, in an "unusually
complicated case."  636 F.3d at 14-17; *see also Hutchinson v. Patrick*, 683 F. Supp. 2d 121, 128-
29 (D. Mass. 2010).  In *Norkunas v. HPT Cambridge, LLC*, 969 F. Supp. 2d 184 (D. Mass.
2013), Judge Young reduced the rate for plaintiff's lead counsel in an ADA case from $425 per
hour to $350 per hour in a more "straightforward" case.  *Id.* at 197-98; *see also Marshall v. Rio
Grande River Ltd. P'ship*, 162 F. Supp. 3d 54, 59-60 (D. Mass. 2016) (Young, J.) (awarding
$300 per hour in another "straightforward" ADA case).  In *Matalon*, 806 F.3d at 638-40, the
First Circuit affirmed Judge Sorokin's award of $400 per hour to plaintiff's lead counsel in a

civil rights case that went to trial.  *See also Matalon v. O'Neill*, 2015 WL 1206343, at \*2 (D. Mass. Mar. 17, 2015).  And, in *Burke v. McDonald*, 2007 WL 2826248, at \*3 (D. Mass. Sep. 28, 2007), Judge O'Toole compensated plaintiff's lead counsel at $300 per hour in a prisoner civil rights case that went to trial.  While plaintiff notes that Judge Gertner awarded attorney Scapicchio attorney's fees at $500 per hour in *Drumgold*, that amount is still well above awards given by other judges in this district.  806 F. Supp. 2d at 431-32.[9]

It is true that this was a moderately complex case with an unusual feature—plaintiff is a mentally disabled individual who could not provide the level of assistance and cooperation that would normally be expected from a client.  The latter fact, however, goes more to the time required to be spent on the case, rather than the hourly rate.  After considering the experience and capabilities of counsel, the type of work performed, and the nature of the case, the Court concludes that the hourly rates requested for both attorneys should be reduced.  Counsel have not pointed to any award of fees in a civil-rights case in this district exceeding $500 per hour, or above $600 per hour in any type of case.  Furthermore, much of the work was performed many years ago, during which the market rates were presumably lower.

Again, however, it is undeniable that this case presented complex issues, and attorney Scapicchio secured a favorable outcome for her client.  Moreover, as Judge O'Toole noted, "it is appropriate [for courts] to take into account the changes in billing rates over time."  *Burke*, 2007 WL 2826248, at \*3.  Taking all those factors into consideration, the Court will reduce the hourly

---

[9] As further guidance, last year this Court compensated lead counsel, who had 40 years' of litigation experience, at a rate of $230 per hour in a complex case involving the Individuals with Disabilities Education Act.  *See Lincoln-Sudbury Reg'l Sch. Dist.*, 2018 WL 2023517, at \*6 (D. Mass. May 1, 2018).  And in the context of a sanctions motion in a complex Fair Labor Standards Act case, this Court recently compensated lead counsel at a rate $450 per hour.  *See Pineda v. Skinner Servs.*, No. 16-12217-FDS (D. Mass.) (ECF No. 233, Dec. 10, 2018).

rate of attorney Scapicchio to $450 per hour.

A reduction is also warranted with respect to attorney Codagnone.  She has significantly less litigation experience than attorney Scapicchio.  Moreover, in other ADA and prisoner litigation cases, judges have awarded amounts ranging from $200 to $300 per hour for more junior attorneys.  *See Norkunas*, 969 F. Supp. 2d at 198 (awarding $265 per hour to associate who did substantive work on case); *Hutchinson*, 683 F. Supp. 2d at 129 (awarding amounts ranging from $212 to $300 per hour for associates at WilmerHale); *Burke*, 2007 WL 2826248, at *4 (awarding $225 per hour for more junior attorneys).   The DOC seeks a reduction to $300 per hour, which the Court will accept.

     **B.**    **Costs**

Under 42 U.S.C. § 12205, a prevailing plaintiff in an ADA action may be entitled to "litigation expenses, and costs."

Attorney Scapicchio has requested expenses in the amount of $4,960.93.  She has submitted an itemized statement of those expenses.  (*See* ECF No. 254-1 at 14-15).  Her expenses can be categorized as follows:  filing fees, federal subpoena fees, witness fees, records requests, postage, investigator fees, deposition transcription, trial transcription, and trial exhibit binders.  The Court will award those expenses, which appear both reasonable and necessary.

Attorney Codagnone has requested expenses in the amount of $78.44 for witness summons on two occasions.  She has submitted an itemized statement of those expenses.  (*See* ECF No. 254-2 at 25).  The Court will award those expenses, which appear both reasonable and necessary.

Therefore, the final breakdown of attorneys' fees and expenses is as follows:

| Attorney | Work, Travel, or Expenses | Hourly Rate | Hours | Subtotals |
|---|---|---|---|---|
| Scapicchio | Work | $450 | 433.5 | $195,075.00 |
| Scapicchio | Travel | $175 | 4.6 | $805.00 |
| Scapicchio | Expenses | N/A | N/A | $4,960.93 |
| Codagnone | Work | $300 | 689.8 | $206,940.00 |
| Codagnone | Travel | $175 | 12.9 | $2,257.50 |
| Codagnone | Expenses | N/A | N/A | $78.44 |

## IV.    Conclusion

For the foregoing reasons, the motion of plaintiff William Cox for attorneys' fees and

costs is GRANTED in the amount of $405,077.50 in fees ($195,880 to attorney Scapicchio and

$209,197.50 to attorney Codagnone) and $5,039.37 in costs ($4,960.93 to attorney Scapicchio

and $78.44 to attorney Codagnone), and is otherwise DENIED.

**So Ordered.**


                                          /s/  F. Dennis Saylor
                                          F. Dennis Saylor IV
Dated:  May 10, 2019                      United States District Judge